RAPIDES GENERAL HOSPITAL

v.

F. David MATTHEWS, Secretary of
Health, Education and Welfare of
the United States of America.

Civ. A. No. 760350.

United States District Court,
W. D. Louisiana,
Alexandria Division.

Aug. 29, 1977.

Charles S. Weems, III, Gold, Little, Simon, Weems & Bruser, Alexandria, La., for plaintiff.

Edward L. Shaheen, U. S. Atty., Leven H. Harris, Asst. U. S. Atty., Shreveport,

La., Paula A. Latshaw, Asst. Regional Atty., Dept. of HEW, Dallas, Tex., for defendant.

NAUMAN S. SCOTT, Chief Judge.

## RULING ON MOTIONS

Rapides General Hospital (plaintiff) has brought this action to obtain judicial review of the final decision of the Provider Reimbursement Review Board (Board) denying medicare reimbursement for certain expenditures incurred by the plaintiff. Motions for summary judgment have been filed by both the plaintiff and the Secretary of Health, Education and Welfare (defendant). Both parties agree that there exists no genuine issue as to material fact, and both contend that they are entitled to a judgment in their favor as a matter of law. Jurisdiction in this court is based on 42 U.S.C. § 1395oo(f).

The major issue in this case is whether the Board, in denying plaintiff's claims, acted in a manner proscribed by 5 U.S.C. § 706.[1]

A cursory review of the procedures relevant to issues of medicare compensation is necessary to an understanding of the present case.

As a consequence of being a medicare provider, a hospital is entitled to monthly reimbursements from fiscal intermediaries (Blue Cross) of the medicare program. 42 U.S.C. § 1395h, and 1395x(v)(1)(A).[2] There is no review at the monthly reimbursement period of the provider's medicare charges as this would unduly burden the provider's flow of capital. 42 U.S.C. § 1395g. However, at the end of the fiscal year the provider must file a cost report with the medicare intermediary. The intermediary then reviews the medicare reimbursements made to the provider over the fiscal year, and makes adjustments for excess or insufficient reimbursements. In the present instance the intermediary disallowed certain of plaintiff's cost claims. It is one of these claims which is the object of plaintiff's suit.

The following facts, developed by pleadings, memoranda, stipulations and the record of the Board hearing are agreed by the parties to be uncontested.

The plaintiff, a non-profit organization, obtained a loan in 1972 to finance new construction which would enhance the overall patient care viability of its facilities. The loan was guaranteed by the United States Government pursuant to the Hill-Burton Act. 42 U.S.C. § 291j–1(a)(1). Provision of a Hill-Burton loan guarantee carries with it an interest subsidy whereby the federal government pays directly to the lender 3% of the effective net interest per year. 42 U.S.C. § 291j–4. The total interest on plaintiff's loan was 7.613% per annum. Thus the interest actually paid by the plaintiff to the lender was 4.613%. As a result of obtaining the loan guarantee and interest subsidy from the federal government, the provider incurs an obligation to provide free patient care to indigents. 42

---

1. The cited statute governs the scope of review by this court. Section 706 states, in pertinent part:

   "706. Scope of Review—To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
   (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

   Further elucidation of the standard established by this statute may be found in *Bowman Transportation, Inc. v. Arkansas-Best Freight, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

2. See also, 20 C.F.R. § 405.402(b)(1)(2) and 405.454.

U.S.C. § 291c. The plaintiff's free care obligation was to equal the value of 200% of the amount received or receivable from Hill-Burton. 42 C.F.R. § 53.111(d)(1). For the year in issue, 1974, the Hill-Burton subsidy was $138,120.00.

Reimbursable medicare costs are broken down into indirect and direct categories. 20 C.F.R. § 405.451(b)(1). However, the Secretary has never promulgated specific definitions of what constitute direct or indirect costs. Thus, we can only be guided by the circumstances surrounding expenditures, past disbursements which have been determined allowable, and our own appreciation of the meaning of these terms in view of the present dispute. For this reason, we will refer to expenditures simply as "costs" or "allowable costs" as the latter is the issue, rather than attempt to define what the Secretary has not. Examples of allowable costs are items such as interest on loans or depreciation of assets. 20 C.F.R. § 405.-418 and 419. The rationale for allowance of this cost reimbursement is readily apparent. Capital expenditures by a provider which are related to facility improvement ultimately benefit all who will utilize the improved plant. Included in this number are

potential medicare patients. As a consequence of their receipt of this benefit, the government has recognized a duty on the part of the medicare program to aid in the cost. This is in accord with the principle that the costs of the medicare program will not be borne by those *not* covered.[3] The portion of the costs allowable to medicare is figured on a ratio of total allowable hospital costs and the proportion thereof that are reimbursable by medicare, the ratio is based on the number of non-medicare patient charges versus medicare patient charges. 20 C.F.R. § 405.452.

Plaintiff avers that the value of the free care obligation is "interest" within the definition of that cost, and is therefore reimbursable.[4] In the alternative, plaintiff contends that the expense of the free care obligation is itself an allowable cost which proportionally benefits the medicare program.

Defendant counters alleging that the free care obligation does not meet the definition of interest as a cost, and that the expense of the free care is not cognizable as a cost in that it directly benefits solely indigents rather than medicare recipients.

3. "Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this title) in order that, *under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this title will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs* . . .". 42 U.S.C. § 1395x(v)(1)(A)(i). (Emphasis added).

4. "(a) *Principle.* Necessary and proper interest on both current and capital indebtedness is an allowable cost. (b) *Definitions—(1) Interest.* Interest is the cost incurred for the use of borrowed funds. Interest on current indebtedness is the cost incurred for funds borrowed for a relatively short term. This is usually for such purposes as working capital for normal operating expenses. Interest on capital indebtedness is the cost incurred for funds borrowed for capital purposes, such as acquisition of facilities and equipment, and capital im-

provements. Generally, loans for capital purposes are long-term loans. (2) *Necessary.* Necessary requires that the interest: (i) be incurred on a loan made to satisfy a financial need of the provider. Loans which result in excess funds or investments would not be considered necessary. (ii) be incurred on a loan made for a purpose reasonably related to patient care. (iii) be reduced by investment income except where such income is from gifts and grants, whether restricted or unrestricted, and which are held separate and not comingled with other funds. Income from funded depreciation or provider's qualified pension fund is not used to reduce interest expense. (3) *Proper.* Proper requires that interest: (i) be incurred at a rate not in excess of what a prudent borrower would have had to pay in the money market existing at the time the loan was made. (ii) be paid to a lender not related through control or ownership, or personal relationship to the borrowing organization. However, interest is allowable if paid on loans from the provider's donor-restricted funds, the funded depreciation account, or provider's qualified pension fund". 20 C.F.R. § 405.419(b).

The foundation for plaintiff's contention that the free care obligation is interest resides in the language of the regulation.[5] Plaintiff keys upon relating elements it alleges exist between the interest definition and the free care obligation.[6] However, one critical component of the interest definition is neglected by the plaintiffs:

"(3) *Proper.* Proper requires that interest be:

(i) . . .

(ii) *be paid to a lender* not related through control or ownership . .". 20 C.F.R. § 405.419(b). (Emphasis added).

The free care here is not "paid to a lender" and the interest subsidy is not paid by the plaintiff. The absence of ambiguity in the above language compels us to conclude that the free care obligation cannot be characterized as interest for purposes of medicare reimbursement.

■ Plaintiff's alternative argument is not so free from difficulty. A necessary precondition to affording a cost identity as an allowable cost of medicare is that there exist a nexus between the cost and some residual benefit to medicare recipients.

"(3) *The determination of reasonable cost of services must be based on cost related to the care of beneficiaries of Title XVIII of the Act. Reasonable cost includes all necessary and proper expenses incurred in rendering services,* such as administrative costs, maintenance costs, and premium payments for employee health and pension plans. *It includes both direct and indirect costs and normal standby costs.* However, where the provider's operating costs include amounts not related to patient care, specifically not reimbursable under the program, or flowing from

the provision of luxury items or services (that is, those items or services substantially in excess of or more expensive than those generally considered necessary for the provision of needed health services), such amounts will not be allowable." 20 C.F.R. § 405.451(c)(3). (Emphasis added).

The issue before us is whether the cost of the free care obligation was a necessary and proper expense incurred in the rendering of services.[7]

The question as to the necessity and propriety of the free care expenditure is answered by the Hill-Burton Act.[8] The Act mandates that employment of its loan guarantee and interest subsidy provisions on behalf of a recipient entity, obliges that entity to allocate a certain portion of its services to indigent health care.[9] This obligation has been recognized to the extent that it vests a cause of action in the prospective beneficiaries to sue for the free care in the absence of its being furnished.[10] As to whether the goal of the costs in this case was appropriate, we believe that implicit in the construction of the improvements was the notion that they would be utilized in the rendition of services, and this presumption has never been challenged by the defendant.

■ The defendant contends that the cost of the free care obligation is *not* one of those covered by the medicare program. The foundation for defendant's argument resides in language found in the Medicare Act:

". . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this sub-

---

5. Id.

6. "Interest is the cost incurred for the use of borrowed funds." Id.

7. "(2) *Necessary and proper costs.* Necessary and proper costs are costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of

the provider's activity." 20 C.F.R. § 405.-451(b)(2).

8. 42 U.S.C. § 291 et seq.

9. 42 U.S.C. § 291c(e)(2).

10. *Saine v. Hospital Authority of Hall County,* 502 F.2d 1033 (5th Cir. 1974); *Cook v. Ochsner Foundation Hospital,* 319 F.Supp. 603 (E.D.La. 1970).

chapter will not be borne by individuals not so covered, and .the costs with respect to individuals not so covered will not be borne by such insurance programs . . .". 42 U.S.C. § 1395x(v)(1)(A)(i). (Emphasis added).

Defendant's opposition is a straightforward one. The indigents receiving Hill-Burton free care are persons other than those covered by medicare. Thus, their stature as "individuals not so covered" automatically precludes the plaintiff from receipt of medicare payments as to their costs. But this response misapprehends the thrust of plaintiff's argument. Plaintiff does not assert that the free care beneficiaries are medicare recipients and that their costs are reimbursable as such. Rather, plaintiff argues that the costs of free care are incidental allowable costs, similar in nature to interest or depreciation, neither of which go directly to benefit medicare patients, but which nonetheless inure as a residual benefit to them and are thus compensable on that basis. Consequently, defendant's response functions in a misplaced context.

Defendant registers another opposition to plaintiff's claim, the substance of which is predicated upon the accounting procedure utilized to compute the value of the free care obligation:

"(4). The term 'operating costs' means the actual operating costs of the applicant for a fiscal year as determined in accordance with cost determination principles and requirements under Title XVIII of the Social Security Act (42 U.S.C. § 1395): Provided, that such 'operating costs' shall be determined for the applicant's entire facility and for all patients regardless of the source of payment for such care: And provided further, That in determining such operating costs there shall be deducted the amount of all actual or estimated reimbursements, as applicable, for services received or to be received pursuant to Title XVIII and XIX of the Social Security Act (42 U.S.C. §§ 1395 and 1396) . . .". 42 C.F.R. § 53.-111(b)(4). (Emphasis added).

Defendant avers that the emphasized quote precludes the free care cost from medicare consideration. However, the operative procedure for determining the value of the free care obligation in the case sub judice is not the operating cost method, but rather the federal assistance method. 42 C.F.R. § 53.111(d)(1). Further, the above language does not state, as defendant contends, that the cost of the free care is not compensable by medicare, but only that medicare reimbursable costs will be deducted from the total operating cost figure of the provider.

In support of its belief that the present costs are reimbursable, plaintiff has directed the attention of the court to a vast array of expenditures which have been accorded status as allowable costs of the medicare program.[11] In view of the allowance of some of these costs, it is difficult for us to perceive how a cost such as the one in issue here is disallowed. The defendant has not attempted to argue that the instant cost is among the number that have been found to be non-reimbursable.[12]

Another consideration that goes far to render plaintiff's argument tenable is the fact that the portion of the interest that the plaintiff does pay to the lender (4.613%) has been characterized as an allowable cost.[13] This is not to say that the value of the free care obligation is interest, that issue has already been resolved in defendant's favor. This factor is brought out to illustrate that the only other cost of the loan (interest) has already been accorded designation as being medicare reimbursable. We believe there exists an inherent inconsistency in allowing

---

11. Only a few of which are: Attorneys' retainer fees; automobile and travel expenses; fees paid to members of the provider's Board of Directors; meals, room and board, uniforms, laundry and day care centers that go to benefit employees, gifts and awards to employees. 1 C.C.H. Medicare and Medicaid Guide, 5866 (1976).

12. 20 C.F.R. § 405.310 and 451(c)(3); 1 C.C.H. Medicare and Medicaid Guide, 5866 (1976).

13. Plaintiffs Cost Report, p. 27, contained in the record of the Board hearing.

the cost of interest to be compensable by medicare, while at the same time disallowing the cost of the free care obligation. The source of both costs is the same. Both are costs imposed on the plaintiff as a result of the expansion of its facilities. The origins and goals of the cost differ. The interest cost arose out of the loan from the bank and is payable to the bank. The free care obligation arose out of the Hill-Burton loan guarantee and is owed to the indigent public. However, these variances are irrelevant insofar as we are concerned. The issue that is and remains before us is that *both* costs entail expenditures on the part of the plaintiff, and that the existence of both is compelled solely by the desire of the plaintiff to create additional means to alleviate the distress caused by health disorders suffered by both medicare and non-medicare patients.

For the aforementioned reasons, we conclude that the decision of the Board in denying the plaintiff reimbursement for the costs of the Hill-Burton free care obligation that were allocable to the medicare program was unreasonable, arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law,[14] and was therefore unlawful. Since there exists no genuine dispute as to any material fact, this case is subject to a summary judgment pursuant to Rule 56(b), Federal Rules of Civil Procedure.

Therefore, it is ORDERED, ADJUDGED AND DECREED that the motion for summary judgment filed by the plaintiff is GRANTED. Plaintiff should submit a judgment in accordance with this ruling within ten days of date.

---

14.  The errors categorized in 5 U.S.C. § 706 are couched in the disjunctive. *O–J Transport Co. v. U. S.*, 536 F.2d 126 (6th Cir. 1976).