**JOHNSON COUNTY MEMORIAL HOSPITAL, et al., Plaintiffs,**

v.

**Richard S. SCHWEIKER, Secretary, Department of Health and Human Services, Leonard D. Schaeffer, Administrator, Health Care Financing Administration, Defendants.**

**Nos. IP 79–905–C, IP 79–1018–C.**

United States District Court, S. D. Indiana, Indianapolis Division.

Dec. 16, 1981.

---

Rex P. Killian, Indianapolis, Ind., for plaintiffs.

Sarah Evans Barker, U. S. Atty., Harold R. Bickham, Asst. U. S. Atty., Indianapolis, Ind., Lewis K. Wise, Dept. of Justice, Washington, D. C., Stephen Weiss, Dept. of Health and Human Services, Baltimore, Md., for defendants.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

Plaintiffs are 51 general, acute care, not-for-profit or county hospitals located in the State of Indiana which participate in the Medicare program contained in Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, et seq., and in the grant program established by the Hill-Burton Act, 42 U.S.C. § 291. Plaintiffs seek review of the defendants' decision not to include the cost of uncompensated care obligations mandated by participation in the Hill-Burton program as reimbursable costs under the Medicare program. Jurisdiction is based on 42 U.S.C. § 1395oo (f)(1). The matter now comes before the Court on the parties' cross-motions for summary judgment.

The basic question presented for determination is that of how to reconcile two separate bodies of legislation which have not been coordinated by Congress.

The Medicare Act was passed in 1965. It provides that participating hospitals will be reimbursed for the reasonable cost of providing medical services to Medicare beneficiaries. 42 U.S.C. § 1395f(b). The Act defines "reasonable cost" in 42 U.S.C. § 1395x(v)(1)(A):

"The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services .... Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter) in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs and (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive."

Pursuant to this statutory authority, the Secretary of Health and Human Services has promulgated regulations which define reasonable cost more fully. 42 CFR §§ 405.401–405.488. The concept of reasonable cost is described in 42 CFR § 405.451 as including "all necessary and proper costs." Necessary and proper costs are defined as costs:

"... which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of the provider's activity." 42 CFR § 405.451(b)(2).

The section states that reasonable cost includes direct and indirect costs: the objective is that costs stemming from providing services to Medicare beneficiaries under the program should not be borne by non-Medicare patients and that costs due to treating non-Medicare patients not be borne by the program. 42 CFR § 405.451(b)(1) and (c)(3).

The Hill-Burton Act, 42 U.S.C. § 291, et seq., was passed in 1946 to provide federal money for the construction and modernization of hospitals in order to assure adequate hospital services to all. 42 U.S.C. § 291. In order to receive this federal aid, hospitals are required to provide a reasonable amount of free care to people unable to pay for such care. 42 U.S.C. § 291c(e)(2). Until 1972, the amount of free care that would be considered reasonable was not specified. In 1972, the Department of Health and Human Services specified that a reasonable amount of free services was an amount equal to: (1) 10% of the federal aid given; (2) 3% of operating costs; or (3) care to all indigents appearing at the hospital in need of care (the open door policy). 42 CFR § 53.111(d).

Each of the plaintiffs entered into a Hill-Burton grant agreement with the United States government. In doing so, each hospital incurred an obligation to provide a reasonable amount of free care to indigents.

The plaintiffs then sought to include their respective Hill-Burton uncompensated care costs as allowable indirect costs or as interest expenses in order to get reimbursement under the Medicare Act. The Fiscal Intermediary, Blue Cross Association/Mutual Hospital Insurance, Inc. ("Blue Cross"), disallowed these costs. The plaintiffs appealed to the Provider Reimbursement Review Board (PRRB). The PRRB affirmed the Blue Cross decision.

This PRRB decision became final when the Administrator of the Health Care Financing Administration, to whom the Secretary of Health and Human Services has delegated the responsibility of administrating the Medicare Act, declined to reverse, affirm, or modify the decision of the PRRB. Plaintiffs now appeal to this Court.

## Background

Judicial review of the PRRB's final decision not to reimburse plaintiffs for their Hill-Burton costs is based on 42 U.S.C. § 1395oo(f)(1) which provides:

"A decision of the board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or any reversal, affirmance, or modification by the Secretary by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Such action shall be brought in the District Court of the United States for the judicial district in which the provider is located or in the District Court of the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5, notwithstanding any other provisions in Section 405 of this Title."

It must be noted that 26 of the plaintiffs are located in the Northern District of Indiana and that the other 25 plaintiffs are located in the Southern District of Indiana. The 26 plaintiffs from the Northern District of Indiana originally filed an action in the United States District Court for the Northern District of Indiana as Cause No. H 79–551 on November 15, 1979. The action was ordered transferred to this court and filed as Cause No. IP 79–1018–C and then was consolidated with the action brought by the other 25 plaintiffs in this court as Cause No. IP 79–905–C.

It could be argued that the transfer of the cause filed in the Northern District of Indiana raises an issue of improper venue. Jurisdiction is conferred to the federal district courts to review reimbursement decisions by 42 U.S.C. § 1395oo(f)(1), but that section goes on to provide that the proper court for such actions is either the District Court for the District of Columbia or the federal district court for the judicial district in which the provider is located. Even assuming an original improper venue, the defendants have waived any objection they might have had by not interposing a timely and sufficient objection. Therefore, the Court's jurisdiction over this matter and over these parties is not impaired. 28 U.S.C. § 1406(b).

The standard of review of the decision to deny reimbursement is that standard contained in 5 U.S.C. §§ 701, et seq. The applicable provision is 5 U.S.C. § 706(2) which provides, in pertinent part, that a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

The issue to be resolved is how the free care costs incurred by provider hospitals in order to obtain federal monies to build or improve hospital facilities fit into the reimbursement of expenses scheme of the Medicare Act. As mentioned earlier, the Medicare Act reimburses hospitals for the reasonable cost of any services, whether direct or indirect costs, provided to Medicare beneficiaries. The Secretary of Health and Human Services has promulgated numerous regulations listing the items to be included in reimbursement. For purposes of this case, only a few of these regulations are relevant.

Reasonable costs is defined as including both direct cost, the cost of services provided directly to Medicare beneficiaries, and a proportionate share of indirect cost, which are costs incurred for the benefit of all patients in the hospital. 42 CFR § 405.-451(b)(1) and (c)(3). In addition to this general definition, two specific inclusions and one specific exclusion from reimbursement are relevant.

Depreciation on assets financed by grants obtained under the Hill-Burton program is a reimbursable cost. 42 CFR § 405.418(a). As explained in 42 CFR § 405.418(b):

"Like other assets (including other donated depreciable assets), assets financed with Hill-Burton or other Federal or public funds become a part of the provider

institution's plant and equipment to be used in rendering services. It is the function of payment of depreciation to provide funds which make it possible to maintain the assets and preserve the capital employed in the production of services. Therefore, irrespective of the source of financing of an asset, if it is used in the providing of services for beneficiaries of the program, payment for depreciation of the asset is, in fact, a cost of the production of those services. Moreover, recognition of this cost is necessary to maintain productive capacity for the future. . . . "

Necessary and proper interest on current and capital indebtedness is also an allowable cost as provided in 42 CFR § 405.419(a). Interest is defined as the cost incurred for the use of borrowed funds. 42 CFR § 405.-419(b)(1). To be "necessary," interest must (1) be incurred on a loan made to satisfy a financial need of the provider and (2) be incurred on a loan made for a purpose reasonably related to patient care. 42 CFR § 405.419(b)(2). To be "proper," interest must be incurred at a prudent rate and must be paid to a lender not related to the provider through control or ownership. 42 CFR § 405.419(b)(3).

Finally, charity care and bad debts are not reimbursable. Charity allowances are defined as "reductions in charges made by the provider of services because of the indigence or medical indigence of the patient." 42 CFR § 405.420(b)(2). Charity care is viewed as a reduction in revenue. The regulation explains that the failure to collect charges for services rendered does not add to the cost of providing services, since that cost has already been incurred in giving the care. 42 CFR § 405.420(c).

In light of these regulations governing reimbursement of costs under the Medicare Act, it is now possible to examine the arguments raised by plaintiffs for allowing the cost of Hill-Burton free care as a reimbursable expense.

### Positions of the Parties

The plaintiffs maintain that their Hill-Burton free care costs are allowable indi-rect costs of the Medicare program. Plaintiffs also argue that Hill-Burton free care should be viewed as interest paid on a loan and thus reimbursable under 42 CFR § 405.-419. Alternatively, plaintiffs assert that, if the full cost of the Hill-Burton free care is not reimbursable, at least the excess of the cost over the depreciation reimbursed on Hill-Burton financed facilities allowed in 42 CFR § 405.418(a) and (b) should be reimbursed.

The PRRB rejected these arguments, holding that Hill-Burton free care is not reimbursable since it is furnished to patients who are not Medicare patients. The PRRB reasoned:

"The Board finds that to allow the cost of the free care would be in direct opposition to the legal and regulatory objective of determining reasonable cost whereby costs with respect to individuals covered by the program will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program (Section 1861(v)(1)(A) of the Social Security Act, as amended, and 42 CFR 405.402(a) and 451(b)(1)). The patients in this case receiving the free care fall into the latter category of patients. Inasmuch as they are not Medicare beneficiaries, their costs, the free care, may not be borne by the program." Administrative Record, p. 0016.

The PRRB also held that reimbursement for Hill-Burton free care is barred by the prohibition of reimbursement for charity allowances contained in 42 CFR 405.420. The PRRB rejected plaintiffs' alternative request for reimbursement of free care cost in excess of the allowance for depreciation for the same reasons as it rejected reimbursement for the full cost.

### Discussion

Very few courts have addressed the question raised by this case. Of the on-point cases brought to the attention of the Court or discovered in the Court's own research, only one unpublished district court opinion

has gone in favor of the government. *Harper-Grace Hospitals v. Schweiker*, No. 80–72082 (E.D.Mich.1981). Two more persuasive opinions on all fours with the case at bar have held that hospitals are entitled to Medicare reimbursement for a portion of the free care given to patients in fulfillment of the hospitals' Hill-Burton obligations. *Presbyterian Hospital of Dallas v. Harris*, 638 F.2d 1381 (5 Cir. 1981), and *Rapides General Hospital v. Matthews*, 435 F.Supp. 384 (W.D.La.1977) (vacated and remanded on other grounds, No. 77–3125, 5 Cir., Oct. 23, 1978, unpublished order).

The PRRB has recently held that the Medicare proportion of Hill-Burton costs are reimbursable, in reliance on *Presbyterian Hospital,* supra. (See *Mount Diablo Hospital Medical Center v. Blue Cross Association/Blue Cross of Northern California* (PRRB No. 81–D–85, Sept. 11, 1981); *Gaston Memorial Hospital, Inc. v. Blue Cross Association/Blue Cross Blue Shield of North Carolina* (PRRB No. 81–D–84, Sept. 11, 1981), and *Catholic Medical Center v. Blue Cross Association/New Hampshire-Vermont Health Service* (PRRB No. 81–D–87, Sept. 11, 1981).)

■ The first major issue to be resolved is whether the Hill-Burton free care obligation is an indirect cost within the meaning of the Medicare Act. 42 U.S.C. § 1395x(v)(1)(A), 42 CFR § 405.451(b)(1) and (c)(3).

The PRRB's argument that the free care obligation should not be reimbursed because the services are rendered to non-Medicare patients misapprehends the point of the free care obligation. The specific hospital services are indeed given to indigents, but they are given by the hospital in exchange for the government interest subsidy. Medicare patients do benefit from the Hill-Burton grants: the free care given to non-Medicare patients is simply a payment for the building improvements enjoyed both by them and by Medicare patients. This point was addressed by the court in *Rapides, supra*. The following language was noted with approval by the Fifth Circuit Court of Appeals in *Presbyterian Hospital of Dallas, supra*, at 388: .

"Defendant's opposition is a straightforward one. The indigents receiving Hill-Burton free care are persons other than those covered by medicare. Thus their statute as 'individuals not so covered' automatically precludes the plaintiff from receipt of medicare payments as to their costs. But this response misapprehends the thrust of plaintiff's argument. Plaintiff does not assert that the free care beneficiaries are medicare recipients and that their costs are reimbursable as such. Rather, plaintiff argues that the costs of free care are incidental allowable costs, similar in nature to interest or depreciation, neither of which go [sic] directly to benefit medicare patients, but which nonetheless inure as a residual benefit to them and are thus compensable on that basis. Consequently, defendant's response functions in a misplaced context." *Rapides, supra*, at 388.

The hospital plaintiffs in this case are not arguing that the Hill-Burton care for indigents is a direct cost which should be subsidized by the Medicare program. Rather, they assert that it is an indirect cost of maintaining or expanding hospital buildings which inures to the benefit of every patient in the hospital. The Hill-Burton free care obligation is a legal duty imposed by the terms of the grant. The Medicare patients benefit from the improved physical plant which results from Hill-Burton grants as they benefit from other, specifically enumerated "necessary and proper costs such as heating and lighting." 42 CFR § 405.451(b)(2).

The Hill-Burton free care obligation costs therefore are indirect costs within the meaning of the Medicare legislation and as such should be proportionately reimbursable.

■ The plaintiffs' second argument is that the Hill-Burton costs are "interest" which is clearly reimbursable within the specific terms of 42 CFR § 405.419(b). The problem with this assertion is that the regulation defines interest so that the Hill-Burton free care obligation does not fall within

the literal terms of portions of this definition. For example, the Hill-Burton funds are not literally "borrowed." They are not repaid to a "lender." The funds are a grant which is repaid by furnishing a fixed amount of free care to indigents.

However, the Hill-Burton Act imposes specific duties on hospitals which accept Hill-Burton funds. Either the Attorney General or a private party may sue to enforce the free care obligation. (See 42 U.S.C. § 300s–6 and *Newsom v. Vanderbilt University*, 653 F.2d 1100, 1107 (6 Cir. 1981).) This obligation functions exactly as does interest: hospitals accepting Hill-Burton funds must provide care to indigents in return for the grants. These funds are only acquired if the hospital agrees to "repay" the government by treating indigents without charge. In spirit, this free care obligation is an exact equivalent of interest, which is most generally defined as ". . . the cost incurred for the use of borrowed funds." 42 CFR § 405.419(b)(1).

The *Rapides* court held, in its discussion of this issue:

"We believe there exists an inherent inconsistency in allowing the cost of interest to be compensable by medicare, while at the same time disallowing the cost of the free care obligation. The source of both costs is the same. Both are costs imposed on the plaintiff as a result of the expansion of its facilities. The origins and goals of the cost differ. The interest cost arose out of the loan from the bank and is payable to the bank. The free care obligation arose out of the Hill-Burton loan guarantee and is owed to the indigent public. However, these variances are irrelevant insofar as we are concerned. The issue that is and remains before us is that *both* costs entail expenditures on the part of the plaintiff, and that the existence of both is compelled solely by the desire of the plaintiff to create additional means to alleviate the distress caused by health disorders suffered by both medicare and non-medicare patients." *Id.* at 388–89.

This Court concurs with that conclusion. The Hill-Burton free care obligation is so like interest on building loans that it would be arbitrary and capricious to exclude the indirect cost of the free care obligation from the Medicare reimbursement calculus if interest on building loans is to be included.

■ One remaining argument by the defendant is that the free care obligation is "charity," which is specifically excluded from the "reasonable cost of services" computation. 42 CFR § 405.420. However, the free care rendered by the hospitals is a legally enforceable obligation.

The scant definition of charity allowances at 42 CFR § 405.420(b)(2) provides:

"(2) *Charity allowances.* Charity allowances are reductions in charges made by the provider of services because of the indigence or medical indigence of the patient."

The hospitals in this case have not provided these services because of the indigence of the patients, but rather because of their Hill-Burton free care obligations. These free care obligations do not fall within the ordinary meaning of the term "charity" (see, e.g., *Webster's New International Dictionary*, Second Edition: charity is an "eleemosynary gift" (when used in a legal context), and "gift" is a "voluntary transfer of real or personal property without consideration").

The parties have not come forward with any cases which define "charity" within the meaning of the Medicare regulations, nor has the Court found any on its own research. The Seventh Circuit has defined charity as a "gift." *Todd v. Citizen's Gas Company of Indianapolis*, 46 F.2d 855, 865 (7 Cir. 1931).

It is clear that this free care obligation is no gift; it is an obligation, a duty. The government's argument that the hospitals gave indigents free care before the obligation was imposed upon them is inapposite. Before they had accepted Hill-Burton funds, and particularly before the specific 1972 guidelines were established, these hospitals had the right to discontinue all free

care to indigents. The acceptance of the Hill-Burton funds are conditioned upon the legal obligation to furnish free care to those unable to pay for hospital services. This "free" care is simply not charity. Therefore, no obstacle remains to the plaintiffs' recovery other than the issue of the amount of the reimbursement. Although the plaintiffs have asked the Court for a ruling on this issue, the case will be remanded to the PRRB. That body must determine the extent to which each hospital has been reimbursed for its Hill-Burton free care expenses. To the extent that the plaintiffs have not been reimbursed, the PRRB must determine precisely what the Hill-Burton expenses are. See *Presbyterian Hospital, supra*, at 1388. It is inappropriate for the Court to make that type of factual determination *de novo*. As noted by the Fifth Circuit in the *Presbyterian Hospital* case, *supra* :

> "Where an error of law has been corrected by a reviewing court, and the only issues remaining in the case are questions which have not yet been considered by the administrative agency but are nevertheless within the agency's authority, the appropriate action is a remand to the agency so that it may exercise its authority. As the Supreme Court explained in *FPC v. Idaho Power Co.*, 344 U.S. 17, 20, 73 S.Ct. 85, 86, 97 L.Ed. 15 (1952), 'the guiding principle . . . is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration.' [citations omitted]." *Id.*, at 1389.

The defendants' motion for summary judgment is hereby denied. The plaintiffs' motion for summary judgment is granted on the questions of law. This matter is hereby remanded to the PRRB for a determination of the residual factual issues in accordance with this decision.