METROPOLITAN MEDICAL CENTER and Extended Care Facility, Plaintiff,

v.

Patricia HARRIS, Secretary of the Department of Health and Human Services; the United States of America; and Blue Cross and Blue Shield of Minnesota, Defendants.

Civ. No. 4–78–512.

United States District Court, D. Minnesota, Fourth Division.

Oct. 20, 1981.

Richard I. Diamond, and John R. Beattie, of Larkin, Hoffman, Daly & Lindgren, Ltd., and Mark G. Mishek, Minneapolis, Minn., for plaintiff.

John M. Lee, Deborah S. Kleinman, Asst. U. S. Attys., Minneapolis, Minn., and Stephen B. Weiss, Dept. of Health and Human Services, Baltimore, Md., for defendants.

## MEMORANDUM and ORDER

RENNER, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment. Richard I. Diamond, Esq., John R. Beattie, Esq., and Mark G. Mishek, Esq., appeared for plaintiff. Debbie S. Kleinman, Esq., and Stephen B. Weiss, Esq., appeared for defendants.

Plaintiff, Metropolitan Medical Center, seeks an order declaring that the cost of providing free care and community services as required by the Hill-Burton Act, 42 U.S.C. § 291 et seq., in its fiscal year ended September 30, 1977, is reimbursable under the Medicare Act, 42 U.S.C. § 1395 et seq. Additionally, plaintiff seeks a prospective application of such a holding to costs incurred in future years.

This action is brought as a judicial review of the decision by the Secretary of Health and Human Services to affirm the final decision of the Provider Reimbursement Review Board, which disallowed reimbursement of Hill-Burton Act costs incurred by plaintiff. In fiscal 1977 this amount equaled $286,233.23.

## I. FACTUAL BACKGROUND

Plaintiff is a participating provider of services under the Medicare program. Between 1968 and 1973, plaintiff applied for and received grants under the Hill-Burton Act totaling $2,800,532. In 1973, plaintiff received under the Hill-Burton Act a loan guaranty and interest subsidy on a loan of $16,765,294. As a condition of receiving the grant, the loan guaranty, and the interest subsidy, plaintiff was required to render free care to persons unable to pay. 42 U.S.C. § 291c(e)(2). For the cost-reporting period at issue here, fiscal year ending September 30, 1977, plaintiff was obligated to provide $450,000 worth of free care. In fact, it exceeded its free care obligation by providing $530,521 worth of free care.

As a further condition of receiving the grant, the loan guaranty, and the interest subsidy, plaintiff was required to make its services available to all persons residing in its territorial area. 42 U.S.C. § 291c(e)(1). Plaintiff has claimed that it incurred in fiscal 1977 expenses of $141,388 in meeting its "community services" obligation, and that this amount is appropriately includable on its Medicare costs report for the period in question.

The Secretary's fiscal intermediary, Blue Cross of Minnesota, disallowed the expenses claimed for free care and community services. Plaintiff appealed to the Provider Reimbursement Review Board. That board upheld the disallowances, by a 2–2 vote in the case of free care, and by a 4–0 vote in the case of community services. The Deputy Administrator of the Health Care Financing Administration, acting as the delegate of the Secretary of Health and Human Services, affirmed both disallowances. This decision constituted final administrative action.

## II. DISCUSSION

A. The Secretary's decision may be overturned only if "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). Plaintiff contends that the Secretary's action was arbitrary, capricious, and not in accordance with the applicable statutes and regulations.

■ B. The first issue raised by plaintiff is whether costs by a hospital in rendering free care under the Hill-Burton Act are necessary and proper indirect costs for which reimbursement is required under the Medicare Act. Plaintiff contends that a careful reading of the applicable statutes and regulations clearly shows them to be reimbursable. Defendants' primary response is that there is no clear showing of Congressional intent for such reimbursement, and that the Secretary acted with appropriate discretion in determining that these expenses were not reimbursable.

The controlling principle of Medicare reimbursement is that a hospital is entitled to reimbursement only for the reasonable cost of services provided to Medicare patients. 42 U.S.C. § 1395f(b). The term "reasonable cost" is defined to encompass both direct and indirect costs of providers of services, with the objective that the costs with respect to individuals covered by the Medicare Program will not be borne by individuals not so covered and the costs with respect to individuals not so covered will not be borne by the Program. 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 405.451(c)(3). "[N]ecessary and proper costs," are defined in the regulations as follows:

Necessary and proper costs are costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of provider's activity.

42 C.F.R. § 405.451(b)(2).

Plaintiff contends that although the provision of free care pursuant to the Hill-Burton Act obligation inures to the direct benefit of indigents rather than to Medicare patients, it indirectly benefits Medicare patients by qualifying the hospital for interest subsidies on construction and modernization projects that are ultimately used by Medicare patients. By maintaining the facility in compliance with Medicare standards, the hospital retains its eligibility to service Medicare patients, and the Medicare Program and Medicare patients assertedly benefit from the continuing availability of the improved facilities for their care.

Support for plaintiff's position is found in *Presbyterian Hospital of Dallas v. Harris*, 638 F.2d 1381 (5th Cir. 1981), *petition for cert. filed on other grounds*, 50 U.S.L.W. 3131 (U.S. Aug. 10, 1981) (81–264). There, the Fifth Circuit held that the free care expenses incurred by the hospital in connection with its obligations under the Hill-Burton Act were reasonable costs of providing care to all of its patients, including Medicare patients, and are consequently reimbursable to the extent that this indirect cost benefited Medicare patients. *Id.* at 1387. Noting that both the statute and the regulations provide for reimbursement for indirect as well as direct costs, 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 405.451(c)(3), the court was unable to distinguish free care expenses from those indirect costs, including depreciation, interest, research costs, and some types of bad debts, which the regulations specify as reimbursable indirect costs. *See* 42 C.F.R. § 405.401 *et seq.* The fact that such expenses also benefited indigent persons who were not Medicare beneficiaries was considered irrelevant to the determinative issue: Whether the expenses were a reasonable cost incurred in the provision of services to Medicare patients. In so holding, the court also found that two factual issues remained for resolution: whether or to what extent the hospital has already been reimbursed for those expenses in the fiscal year at issue, and, to the extent that the hospital's free care expenses have not been reimbursed, precisely what those expenses are.

Defendants raise a number of arguments in response to plaintiff's motion and the *Presbyterian Hospital* case. Initially, they assert that there is an absence of Congressional intent for such reimbursement of

Hill-Burton Act free care costs. The Act requires that hospitals receiving benefits under the program "furnish needed services for persons unable to pay therefore." 42 U.S.C. § 291c(e). Thus, to hold that hospitals need not satisfy their free care obligation out of their resources, but may finance their obligation in substantial part through federal Medicare moneys arguably robs the Hill-Burton free care obligation of all meaning. Defendants point out that in enacting the Medicare legislation, Congress nowhere evidenced any intent to eliminate or reduce hospitals' Hill-Burton free care obligations.

Defendants cite *Harper-Grace Hospitals v. Schweiker*, No. 80–72082 (E.D.Mich. April 1, 1981), as providing the correct analysis of this question. In that court's view, Hill-Burton free care expenses differed from other reimbursable expenses such as depreciation and research costs. To hold otherwise would, in effect, assertedly confer upon a hospital a double benefit. The first benefit arises from the construction subsidy provided by the Hill-Burton Act, thus resulting in lower construction costs. The second benefit was viewed to be the reimbursement of the free care obligation, a cost that would seem to have been covered by the construction subsidy. Moreover, the court held that the free care obligation is not satisfied if the federal government pays for it. Hence, in those circumstances where Congress allegedly established in the Hill-Burton Act a clear policy requiring free care commitments in exchange for Hill-Burton benefits, that court considered itself obligated to construe subsequent legislation such as the Medicare Act consistent with that Hill-Burton policy and deny reimbursement.

Defendants' argument is premised on the assumption that Congress intended for the health care provider receiving Hill-Burton benefits to undertake the financial burden of this obligation. The legislative history of the Hill-Burton Act, however, does not provide support for defendants' argument. The general tenor of the Senate hearings on the Hill-Burton Act reflects a desire to assure availability of the facilities for all people, regardless of their financial position. *Hospital Construction Act: Hearings on S. 191, Before the Senate Comm. on Education and Labor,* 79th Cong., 1st Sess., 189 (1945). There is no evidence of any intent to require a hospital to pay for rendering the free care, only that the facilities be made available to all people. *See Debates on Senate Bill 191,* Cong.Rec., Dec. 11, 1945, 79th Congress, 11723, 11795–96.

Initial regulations issued under the Hill-Burton Act clearly show that it was never contemplated that Hill-Burton assistance was intended to require a hospital to pay for rendering the free or below cost care required by the statute. As originally adopted, section 53.63 of the Hill-Burton regulations stated, in part, that "[s]uch care may be paid for wholly or partly out of public funds or contributions of individuals and private and charitable organizations such as Community Chest or may be contributed at the expense of the hospital itself." Fed.Reg. 6179 (Sept. 16, 1947).

The statute, its legislative history, and the regulations promulgated under it, all, support the view that a Hill-Burton free care provider need not assume the entire financial burden of its free care obligation. The purpose of the Act is served by the facility being made available to all people, regardless of ability to pay.

The issue then arises of whether Congress intended the Medicare Act to compensate a Hill-Burton provider for the free care undertaking. As conceded by plaintiff, the chief difficulty in reconciling Hill-Burton Act free care requirements with the reimbursement principles of the Medicare Act is that neither the Medicare Act itself nor the regulations thereunder specifically address the issue. This omission, while not determinative, does require plaintiff to establish the general purpose of the Medicare Act to be consistent with the reimbursement of the Hill-Burton Act free care obligation.

The statutory provision governing Medicare reimbursement is found at 42 U.S.C. § 1395x(v)(1)(A). This section reflects the general intent of the Act to be that a

provider of services be paid for the reasonable direct and indirect costs of services rendered. Congress granted to the Secretary the authority to define "reasonable costs" by regulation, but required that both direct and indirect costs of providers be reimbursed so that the Medicare program bear its proportionate share of those costs. 42 U.S.C. § 1395x(v)(1)(A)(ii).

When the free care obligation is compared to those costs for which reimbursement is available, the Court finds it difficult to differentiate among them. The free care obligation is, in essence, a cost of construction, similar to interest or depreciation. The undertaking of this cost by the hospital allows all patients who visit the facility, including Medicare patients, to benefit from it. Hence, the free care obligation indirectly benefits Medicare patients and should be proportionately reimbursed.

Defendants raise the additional argument that reimbursement is precluded here because free care constitutes charity, which is excluded from Medicare reimbursement. 42 C.F.R. § 405.420(a). "Charity" is defined in the regulations as "reductions in charges made by the provider of services because of the indigence or medical indigence of the patient." 42 C.F.R. § 405.420(b)(2). This argument fails to recognize that the free care obligation is legally enforceable and as a result, the charges are not reduced because of the indigence of the patient, but because of the undertaking of the Hill-Burton obligation. The fact that plaintiff voluntarily undertook the Hill-Burton obligation or that it provided more free care than legally required does not obviate the compelled nature of the free care provided, for which plaintiff now seeks reimbursement. The fact that plaintiff is obligated to provide a substantially greater ultimate payout than the actual benefits received in the form of subsidies is analogous to a typical mortgage where the total pay-out will often exceed the principal amount of the loan, and does not imply any charitable intent.

Accordingly, the Court is convinced that the Hill-Burton free care obligation is reimbursable as an indirect cost under 42 U.S.C.

§ 1395x(v)(1)(A) of the Medicare Act. The Secretary's determination that the indirect costs of providing free care under Hill-Burton are not reimbursable is erroneous and contrary to the statute. The Secretary has acted in an arbitrary and capricious manner in refusing to allow reimbursement for the indirect costs actually incurred by plaintiff in providing free care.

■ C. Plaintiff also seeks reimbursement for its various community service program costs. These programs are allegedly required under the Hill-Burton Act and largely benefit Medicare patients. Hence, it asserts that the costs of providing these programs are reimbursable under the Medicare Act.

Under 42 U.S.C. § 291c(e), a provider receiving Hill-Burton construction benefits must assure the Government that the facility being constructed or modernized will be made available to all persons residing in the provider's territorial area. The provider is to "take such additional steps as may be necessary to ensure that admission to and the services of the facility will be available to [Medicare] beneficiaries . . . ." 42 C.F.R. § 53.113(d)(2)(ii).

Plaintiff contends that its community outreach programs are clearly necessary and proper in developing and maintaining the operation of its facilities and ensure availability to Medicare patients. These programs include plaintiff's Hi-Rise Community Clinics, Long Term Care Consultation, and Senior Health Program.

The Court cannot accept plaintiff's argument. There is absolutely no requirement that a Hill-Burton provider undertake the type of affirmative outreach programs conducted by plaintiff. The only requirement is that of availability. Plaintiff has failed to show how these programs make its facilities any more available to Medicare beneficiaries than had they not existed. Plaintiff fails to cite statutory or case support for its position that its community service programs are "additional steps" taken to "ensure admission" to its facility of Medicare beneficiaries. The Secretary has correctly denied reimbursement for plaintiff's costs

in operating its community services programs.

■ D. As a final matter, plaintiff contends that a determination that the costs of providing free care and community services under the Hill-Burton Act are reimbursable under the Medicare Act must be applied prospectively without requiring resort to further administrative proceedings for subsequent fiscal years. Defendants take the position that "it is the intention of the Department of Health and Human Services to apply any final judicial decision in this case to the Plaintiff's succeeding costs reporting years." In the face of this representation, the Court considers resolution of this question at this time to be premature. This conclusion is buttressed by the fact that since the date of the hearing in this matter the Provider Reimbursement Review Board has reversed its position in this case and has issued at least ten decisions holding that the legal obligations related to the Hill-Burton Act are allowable costs and reimbursable under the Medicare Act.

Based on the foregoing, the record, and the arguments and briefs of counsel, the Court makes the following:

## CONCLUSIONS OF LAW

1. The cost to plaintiff of complying with the free care obligation under the Hill-Burton Act is a reimbursable cost under the Medicare Program.

2. The cost to plaintiff of its community outreach services is not a reimbursable cost under the Medicare Program.

3. The action of the Secretary in denying reimbursement to plaintiff for its costs in complying with its free care obligation was arbitrary, an abuse of discretion, and not in accordance with law and is vacated.

4. The action of the Secretary in denying reimbursement to plaintiff for its costs associated with its community outreach services is appropriate and is affirmed.

## ORDER

IT IS HEREBY ORDERED that defendants shall take all necessary steps to read-

just plaintiff's Cost Reports and Reimbursements from the Medicare Program for its costs in complying with its Hill-Burton free care obligations for the fiscal year ending September 30, 1977, in accordance with this Memorandum and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.