**IREDELL MEMORIAL HOSPITAL, INC., Plaintiff,**

v.

**Richard SCHWEIKER, Secretary of the U. S. Department of Health and Human Services, Defendant.**

**No. ST–C–81–52.**

United States District Court, W. D. North Carolina, Statesville Division.

Jan. 7, 1982.

Womble, Carlyle, Sandridge & Rice, Anthony H. Brett, Winston-Salem, N. C., for plaintiff.

Attorney Health Care Financing Div., Dept. of Health and Human Services, Stephen D. Weiss, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

POTTER, District Judge.

THIS MATTER coming on to be heard and being heard before the undersigned United States District Court Judge for the Western District of North Carolina on the 21st day of December, 1981, at the United States Courthouse in Statesville, North Carolina, on the motions of the Plaintiff and Defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; and,

Mr. Anthony H. Brett, Attorney at Law, having appeared for the Plaintiff, and Mr. Stephen Weiss, Attorney at Law, having appeared for the Defendant; and,

The Court having heard the oral arguments of the parties and having read the pleadings, the briefs, and the other documents filed in this matter, and being of the opinion that there is no genuine issue as to any material fact and that judgment as a matter of law is proper, enters the following Memorandum and Order:

Plaintiff, Iredell Memorial Hospital, seeks judgment and an order declaring that the actual cost of providing uncompensated indigent care pursuant to its obligation under Section 603(e)(2) of the Hill-Burton Act, 42 U.S.C. § 291c(e)(2) (1974) is an allowable indirect cost, reimbursable under Section 1861(v) of the Medicare Act, 42 U.S.C. § 1395x(v) (West Supp.1981).

*Procedural History.*

Blue Cross/Blue Shield of North Carolina, the Defendant's fiscal Intermediary, disallowed reimbursement; the Provider Reimbursement Review Board [PRRB] upheld the disallowance by a 3–2 vote. The Defendant, Secretary of Health and Human Services, declined to review the PRRB decision, which then became a final administrative agency determination pursuant to 42 U.S.C. § 1395*oo* (f)(1) (West Supp.1981), reviewable under the Administrative Procedure Act, 5 U.S.C. § 701 (1977). The PRRB decision may be overturned if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1977).

*Factual Background.*

Plaintiff is a 182-bed general short-term care hospital located in Statesville, North Carolina. It is a qualified provider of services under the Medicare program. Plaintiff received $1,286,568. between 1969 and 1970 as a grant under the Hill-Burton Act. As a condition of receiving the grant, Plaintiff was required to render uncompensated care to persons unable to pay. 42 U.S.C. § 291c(e)(2) (1974). Plaintiff furnished such uncompensated care during its fiscal year ending September 30, 1977 in the amount of $132,290. and during its fiscal year ending September 30, 1978 in the amount of $151,653. The amount of reimbursement in dispute is $55,591. for 1977 and $64,710. for 1978, a total of $120,301.

## DISCUSSION

The Defendant bases his position of disallowance upon two arguments:

1. The Secretary's interpretation of its own regulations is entitled to a high degree of deference:

    (a) Hill-Burton care constitutes "charity" under the regulations;

    (b) regulations prohibit reimbursement of services to non-Medicare beneficiaries; and,

    (c) regulations prohibit reimbursement of expenses where

    (i) the individual to whom the services are furnished has no legal obligation to pay, and

    (ii) no other person has a legal obligation to pay.

2. Congress intended Hill-Burton "free care" to be at the expense of the hospital, not the government.

If these arguments are found not to be in accordance with the law, this Court must overturn the decision of the PRRB and order reimbursement to the hospital of the sum in dispute.

1. *Deference to the Secretary.*

Defendant contends that this Court must defer to the Secretary's interpretation of its own regulations, citing *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). However, in that case the regulation at issue was explicit in what was to be excluded from coverage under the governing Act. The Court's primary consideration in *Batterton* was whether the explicit exclusion was reasonably within the purpose of the Act. *Id.* at 429–432, 97 S.Ct. at 2407–09.

The function of this Court in this case must be distinguished, since neither the Medicare Act nor the regulations promulgated thereunder specifically address the issue of reimbursing Hill-Burton health care to those unable to pay. The function of this Court is to analyze the Medicare Act and its regulations to determine whether reimbursement of Hill-Burton expenses is consistent with the general purpose of Medicare and the intent of Congress under the Hill-Burton Act.

A provider of services under Medicare is entitled to reimbursement for the reasonable cost of services provided to Medicare patients, calculated in part as follows: "the lesser of (A) the reasonable cost of such services, as determined under Section 1395x(v) of this Title [42] . . ., or (B) the customary charges with respect to such services . . ." 42 U.S.C. § 1395f(b)(1) (West Supp.1981).

Section 1395x(v)(1)(A) states, "[t]he reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary . . . and shall be determined in accordance with regulations. . . . Such regulations shall (i) take into account both direct and indirect costs of providers of services . . . in order that . . . the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered, and that costs with respect to individuals not so covered will not be borne by [Medicare]." 42 U.S.C. § 1395x(v)(1)(A) (West Supp. 1981).

"Necessary and proper costs are costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of provider's activity." 42 C.F.R. § 405.451(b)(2) (1980).

■ The above provisions of the Medicare Act and its regulations reflect a general intent to reimburse the provider for reasonable direct and indirect costs of services rendered. Indirect costs which are allowed include costs related to construction: interest and depreciation. [42 C.F.R. § 419(a) (1980) (interest); 42 C.F.R. § 405.418(a) (1980) (depreciation) ].

The provision of a certain level of uncompensated care mandated by 42 C.F.R. § 53.111(h) (1980) qualifies the hospital for interest subsidies on construction and modernization projects under the Hill-Burton Act. In lieu of the payment of interest, the provision of uncompensated care is a cost of construction, which would be a reasonable

cost reimbursable under the general scheme and purposes of the Medicare Act, in the absence of language in either regulation or statute to the contrary.

### 1.A. Charity.

Defendant contends that the uncompensated care required by Hill-Burton constitutes "charity" as it is defined in 42 C.F.R. § 405.420(b)(2) (1980): "reductions in charges made by the provider of services because of the indigence or medical indigence of the patient", and thus it is not an allowable cost. [42 C.F.R. § 405.420(g) (1980)].

However, the hospital would not provide this uncompensated care in the absence of a legally enforceable obligation under 42 U.S.C. § 291c. *Cook v. Ochsner Foundation Hospital*, 559 F.2d 968 (5th Circuit 1977). The "voluntary" nature of the application by the hospital for Hill-Burton aid may not be carried over to characterize the nature of the provision of uncompensated care as "charity"; the concepts are distinct. A hospital applies for Hill-Burton aid for many reasons; the "voluntary" nature of economic necessity is debatable. However, the motivation behind applying for such aid would in no case be "charitable", since it is based upon self-interest and financial expansion. The word "charity" has been explored in great detail in *St. James Hospital v. Harris*, 535 F.Supp. 751 (N.D.Ill.1981). The court in that case concluded that the characterization of uncompensated care under Hill-Burton as "charity" was "arbitrary, erroneous, and irrational." [at 760].

### 1.B. Reimbursement to Non-Medicare Beneficiaries.

Defendant raises 42 U.S.C. § 1395x(v)(1)(A), quoted in part on Page 797 of this opinion, to bar reimbursement of expenses incurred in treating non-Medicare beneficiaries, i.e. the indigents treated under Hill-Burton. Defendant contends that this cost, though mandatory for the receipt of funds to build a structure which *will* benefit Medicare patients, is not a cost

"properly associated with the care of Medicare beneficiaries." [Defendant's brief, Page 11] Defendant quotes *Harper-Grace Hospital v. Schweiker*, No. 80–72082 (E.D. Mich., April 1, 1981) (slip opinion at Page 7):

> although the hospital built or modernized with Hill-Burton funds benefits all patients of that facility, both Medicare and non-Medicare alike, the provision of indigent health care does not benefit Medicare recipients *except for the attenuated reason that their provision is required by a grant that benefits all.*

[emphasis added.]

The "attentuation" referred to by the court in *Harper-Grace* is obscure. Interest payments are forwarded to a bank, not to Medicare recipients, yet interest payments are allowable costs, "required by a grant that benefits all." The *recipient* of the expenditure, be it banker or poor person, should not be determinative of the issue in this case. Rather, the *cause* of the expenditure, the reasonableness of the cost of operation, should be the focus of this case. The courts in *Presbyterian Hospital of Dallas v. Harris*, 638 F.2d 1381 (5th Cir. 1981), *cert. denied on other grounds*, —— U.S. ——, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), and *Rapides General Hospital v. Matthews*, 435 F.Supp. 384 (W.D.La.1977), *vacated and remanded on other grounds*, No. 77–3125 (5th Cir. October 23, 1978), held that Hill-Burton care costs were indistinguishable from other indirect costs, which are reimbursed by Medicare.

### 1.C. Reimbursement Where No Individual Has Legal Obligation to Pay.

Additionally, Defendant contends that 42 U.S.C. § 1395y(a) (1974) bars reimbursement:

> Notwithstanding any other provisions of this title, no payment may be made under part A or part B for any expenses incurred for items or services—
> 
> \*    \*    \*    \*    \*    \*
> 
> (2) for which the individual furnished such items or services has no legal obli-

gation to pay, and which no other person (by reason of such individual's membership in a prepayment plan or otherwise) has a legal obligation to provide or pay for.

A careful reading of this statutory provision discloses that the indigence of the patients treated is only one-half of the inquiry; there must also be "no other person [with] a legal obligation to provide or pay for" the health care services provided. The Hill-Burton Act is the "legal obligation" under which the hospital is mandated to provide services to those unable to pay. *Cook v. Ochsner Foundation Hospital*, supra. Therefore, 42 U.S.C. § 1395y(a) has no application to the case at bar.

This Court must conclude from the foregoing analysis, that there are no regulations promulgated by the Defendant which control this case. The only remaining source of guidance is Congressional intent.

### 2. *Congressional Intent.*

Finally, Defendant contends that "[i]n enacting the Medicare legislation, Congress nowhere evidenced the slightest intent to eliminate or to reduce hospitals' Hill-Burton free care obligations." [Defendant's brief, Page 9.] Defendant cites *Harper-Grace, supra*, as correctly noting that a double benefit inures to the hospital through Medicare reimbursement of Hill-Burton expenses. The first benefit is reduced construction costs; the second is government-financed indigent care, instead of the "free care" which Congress sought to require hospitals to provide.

This issue has been most thoroughly addressed in *Metropolitan Medical Center and Extended Care Facility v. Harris*, 524 F.Supp. 630, 633 (D.Minn.1981):

Defendant's argument is premised on the assumption that Congress intended for the health care provider receiving Hill-Burton benefits to undertake the financial burden of this obligation. The legislative history of the Hill-Burton Act, however, does not provide support for defendants' argument. The general tenor of the Senate hearings on the Hill-Bur-

ton Act reflects a desire to assure availability of the facilities for all people, regardless of their financial position. Hospital Construction Act: Hearings on S. 191, Before the Senate Comm. on Education and Labor, 79th Cong., 1st Sess., 189 (1945). There is no evidence of any intent to require a hospital to pay for rendering the free care, only that the facilities be made available to all people. See Debates on Senate Bill 191, Cong.Rec., Dec. 11, 1945, 79th Congress 11723, 11795–96.

Initial regulations issued under the Hill-Burton Act clearly show that it was never contemplated that Hill-Burton assistance was intended to require a hospital to pay for rendering the free or below cost care required by the statute. As originally adopted, section 53.63 of the Hill-Burton regulations stated, in part, that "[s]uch care may be paid for wholly or partly out of public funds or contributions of individuals and private and charitable organizations such as Community Chest or may be contributed at the expense of the hospital itself." Fed.Reg. 6179 (Sept. 16, 1947).

The statute, its legislative history, and the regulations promulgated under it, all support the view that a Hill-Burton free care provider need not assume the entire financial burden of its free care obligation. The purpose of the Act is served by the facility being made available to all people, regardless of ability to pay.

After reviewing the statutes, regulations and the legislative history of both Medicare and Hill-Burton Acts, the Court is convinced that the Hill-Burton obligation to provide uncompensated care is reimbursable as an indirect cost under 42 U.S.C. § 1395x(v)(1)(A) of the Medicare Act. The Secretary's determination that the indirect costs of providing uncompensated care under Hill-Burton are not reimbursable is erroneous and contrary to the statute and must be overturned. This opinion is further supported by the recent decisions of the PRRB in *John Muir Memorial Hospital v. Blue Cross Assn.*, [1981] 4 Medicare and Medicaid Guide (CCH) ¶ 31,492 and *Gaston*

*Memorial Hospital, Inc., v. Blue Cross Assn.,* [1981] 4 Medicare and Medicaid Guide (CCH) ¶ 31,545. In both cases, the PRRB ruled that Hill-Burton uncompensated care is reimbursable, reversing its prior position, which it took in the case at bar.

IT IS THEREFORE ORDERED that:

1. The Plaintiff's motion for Summary Judgment should be and is hereby allowed.

2. Defendant's motion for Summary Judgment is denied.

3. Plaintiff's actual expenses incurred in providing uncompensated care mandated by the Hill-Burton Act is reimbursable under the Medicare Program.

4. Defendant take all necessary steps to readjust Plaintiff's Cost Reports and Reimbursements from the Medicare Program for its costs in complying with its Hill-Burton uncompensated care obligations for the Plaintiff's fiscal years ending September 30, 1977 and September 30, 1978.

5. The Defendant shall additionally reimburse Plaintiff for annual interest on the amount of reimbursement [$120,301.] to be computed in accordance with 42 U.S.C. § 1395oo (f)(2) (West Supp.1981).

6. Each party shall pay its own costs, including attorney fees.