**IREDELL MEMORIAL HOSPITAL, INC., Appellee,**

v.

**Richard S. SCHWEIKER, Secretary of the United States Department of Health and Human Services, Appellant.**

**American Hospital Association, and State Hospital Associations for the states of South Carolina, North Carolina, Virginia, West Virginia, Amicus Curiae.**

No. 82–1208.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1982.

Decided Feb. 10, 1983.

Marleigh D. Dover, Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Charles W. Brewer, Asst. Atty. Gen., Fresno, Cal., Anthony J. Steinmeyer, Dept. of Justice, Washington, D.C., on brief), for appellant.

Leonard C. Homer, Baltimore, Md. (Ober, Grimes & Shriver, Baltimore, Md., on brief), for South Carolina Hosp. Ass'n, North Carolina Hosp. Ass'n, Virginia Hosp. Ass'n and West Virginia Hosp. Ass'n.

Patricia S. Hofstra, Chicago, Ill., on brief, for American Hosp. Ass'n.

Anthony H. Brett, Winston-Salem, N.C. (Roddey M. Ligon, Jr., Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., on brief), for Iredell Memorial Hosp., Inc.

Before RUSSELL, WIDENER and SPROUSE, Circuit Judges.

SPROUSE, Judge:

This action was commenced administratively by Iredell Memorial Hospital, Inc. ("the Hospital"), to obtain reimbursement under the Medicare Act[1] for costs the Hospital incurred in providing free medical care to indigent patients, as required by the

1. 42 U.S.C. § 1395 et seq.

Hill-Burton Act.[2] The Blue Cross Association/Blue Cross and Blue Shield of North Carolina, as fiscal Intermediary disbursing Medicare funds, disallowed the Hospital's claims. The Hospital appealed to the federal Provider Reimbursement Review Board ("PRRB"), which upheld the Intermediary. The Secretary of the United States Department of Health and Human Services ("the Secretary") declined to review the PRRB decision, thereby upholding it. The Hospital then appealed the PRRB decision to the district court, which reversed the Secretary and the PRRB. 535 F.Supp. 795. The district court held that free medical care to indigents required by the Hill-Burton Act is reimbursable as a proper Medicare indirect cost. We reverse, agreeing with the PRRB and the Secretary that such reimbursement is specifically prohibited by regulations promulgated by the Secretary; and that the reimbursement of such costs would be contrary to the purpose of both the Hill-Burton and Medicare Acts.

The Hospital is a 182-bed general short-term hospital located in Statesville, North Carolina, owned by the municipality but operated by a nonprofit organization. In the late 1960's, the Hospital received a $1,286,568 grant under the Hill-Burton Act to construct a new wing, expanding the Hospital's capacity from 100 to 182 beds.

The portion of the Hill-Burton Act generating the instant controversy is contained in 42 U.S.C. § 291c(e)(2), which provides:

[T]here will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor, but an exception shall be made if such a requirement is not feasible from a financial viewpoint.

The Secretary has promulgated regulatory guidelines[3] establishing the amount of free care which must be furnished to comply with the Hill-Burton requirement of free care to indigents. The Hospital in compliance with those guidelines furnished free care worth $132,290 in its fiscal year

ending September 30, 1977, and $151,653 in fiscal year 1978. The Hospital claimed a portion of these costs in its Medicare reports and, if the claims were honored, would have been reimbursed $55,591 for 1977 and $64,710 for 1978.

Under the Medicare Act, providers of medical services to persons eligible for Medicare services are to be reimbursed for "the lesser of (A) the reasonable cost of such services, as determined under Section 1395x(v) of this title, . . . or (B) the customary charges with respect to such services . . ." 42 U.S.C. § 1395f(b)(1). The Hospital in this case sought reimbursement for "the reasonable cost of its services."

Ascertainment of the reasonable cost of services is controlled by 42 U.S.C. § 1395x(v)(1)(A), which provides in relevant part that:

The reasonable cost of any services shall be the cost actually incurred, . . . and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services; . . . . Such regulations shall (i) take into account both direct and indirect costs of providers of services . . . [so that the costs] will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs . . . .

The Hospital claims that the Hill-Burton services are an indirect cost of providing care to Medicare eligible persons. Because the improved facility benefits all patients, including Medicare patients, the Hospital argues that it should be reimbursed for the percentage of the Hill-Burton services corresponding to the Hospital's percentage of Medicare patients.

The Intermediary, however, disallowed the Hospital's claim for reimbursement for Hill-Burton care on the ground that this care was "charity." The PRRB and the

---

**2.** 42 U.S.C. § 291 *et seq.*

**3.** 42 CFR § 53.111 (1981).

Secretary affirmed this position. The disallowance was based primarily on the Secretary's regulation, which expressly excludes "charity" as a reimbursable item, 42 C.F.R. 405.420(a). The Secretary defines "charity" as "reductions in charges made by the provider because of the indigence or medical indigence of the patient." 42 C.F.R. § 405.-420(b)(2). The district court, reversing the Secretary, concluded that the cost of providing Hill-Burton care was not charity because the care was not provided voluntarily, but rather was required as a condition for receiving the Hill-Burton grant.

Although the genesis of this litigation was in the Hospital's claim for reimbursement under the Medicare statute, the requirements for the service generating the claims originated in the Hill-Burton Act; therefore both Acts must be construed. Since the answer is not clear from either Act, it is not surprising that this question has been the source of considerable litigation. Two cases have reached the circuit courts and have resulted in conflicting opinions. The Fifth Circuit has held that these costs were properly reimbursable under the Medicare program,[4] but the Eighth Circuit reached the opposite conclusion, holding that the cost of Hill-Burton required care to indigents was not reimbursable.[5]

There is much to be said for the analysis contained in each opinion, but we agree with the reasoning of Judge Heaney in the Eighth Circuit opinion, that the Secretary's regulations and construction of both statutes require the conclusion that the costs are not reimbursable.

While the provision of free services mandated by the Hill-Burton Act may not strictly conform to the dictionary definition of, nor even to the general concept of, "charity," the care to indigents required by

the Hill-Burton Act is clearly encompassed by the definition given in the Secretary's regulation. We cannot say that this definition is at fatal variance with the reimbursement scheme of the Medicare Act; rather, this definition and its application to exclude Hill-Burton care from reimbursement are consistent with the limitations on Medicare reimbursement set forth in the Medicare Act itself.[6]

Moreover, providing medical care to indigents was an obligation imposed as a condition for obtaining the Hill-Burton grant. To permit the Hospital to be paid by the federal government for the "cost" of this care, under the provisions of another Act (Medicare), would defeat the intent of Congress as expressed in both of the Acts. *Metropolitan Medical Center v. Harris,* 693 F.2d 775 (8th Cir.1982).[7]

For the foregoing reasons, the judgment of the district court is reversed.

REVERSED.

---

4.  *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381, *rehearing en banc denied,* 647 F.2d 1121 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981).

5.  *Metropolitan Medical Center v. Harris,* 693 F.2d 775 (8th Cir.1982).

6.  42 U.S.C. § 1395x(v)(1)(A), *supra,* prohibits medicare reimbursement for services to a nonmedicare patient; 42 U.S.C. § 1395y(a)(2)

prohibits medicare reimbursement for care for which an individual "has no legal obligation to pay"; 42 U.S.C. § 1395y(a)(3) prohibits medicare reimbursement where the care has been "paid for directly or indirectly by a governmental entity."

7.  *See also* Note, The Propriety of Reimbursement by Medicare for Hill-Burton Free Care, 130 U.Pa.L.Rev. 892 (1982).