**PRESBYTERIAN HOSPITAL OF DALLAS, Plaintiff-Appellant,**

v.

**Patricia R. HARRIS, Secretary of Health and Human Services, Defendant-Appellee.**

No. 80–1589

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Unit A

March 13, 1981.

Rehearing and Rehearing En Banc Denied May 11, 1981.

Grover Hartt, Jr., Dallas, Tex., for plaintiff-appellant.

Kenneth J. Mighell, U.S. Atty., Fort Worth, Tex., John M. Stokes, Regional Atty., Suzanne C. Cochran, Asst. Reg. Atty., Dallas, Tex., Judith A. Shepherd, Asst. U.S. Atty., Dallas, Tex., for defendant-appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This appeal arises from an action brought by Presbyterian Hospital of Dallas (the

Hospital) to seek review of a final decision of the Secretary of Health and Human Services (the Secretary) which denied medicare reimbursement for certain expenses incurred by the Hospital in 1976. In particular, the Hospital challenges (1) the disallowance of expenses incurred in the provision of television and telephone service to the Hospital's medicare patients, and (2) the disallowance of expenses incurred in the provision of free medical care to indigents, as required of the Hospital by the Hill-Burton Act. The United States District Court for the Northern District of Texas granted summary judgment in favor of the Secretary on both grounds. With respect to the first, we affirm the judgment of the district court. With respect to the second, we reverse the judgment of the district court and direct the district court to remand this case to the Secretary.

## I. THE FACTS

The Hospital is a private, non-profit acute care hospital located in Dallas, Texas. It is a qualified provider of medical services under Part A of the medicare provisions of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (1976), and is therefore entitled to be reimbursed for the reasonable costs it incurs in the provision of necessary health services to medicare beneficiaries. 42 U.S.C. §§ 1395f(b), 1395x(v)(1)(A) (1976). In 1976, approximately 31% of the Hospital's patients were treated under the medicare program. As a medicare provider, the Hospital is entitled to monthly reimbursements from a fiscal intermediary of the Department of Health and Human Services. 42 U.S.C. §§ 1395g, 1395h (1976). There is no review of monthly reimbursements, 42 U.S.C. § 1395g, but at the conclusion of each fiscal year medicare providers must file a cost report with the intermediary. 42 U.S.C. § 1395g; 42 C.F.R. § 405.453(f) (1979). The intermediary may then retroactively adjust the payments it has made during the previous year. 42 U.S.C. § 1395g; 42 C.F.R. § 405.454(f) (1979).

The fiscal intermediary which reimburses the Hospital is Blue Cross of Texas (the Intermediary). After the Intermediary received the Hospital's cost report for the

fiscal year ending September 30, 1976, it adjusted the amount due the Hospital for that year by reducing the Hospital's reimbursable expenses for, *inter alia*, the two items at issue here. The Hospital appealed the Intermediary's decision to the Provider Reimbursement Review Board of the Department of Health and Human Services (the Board), pursuant to 42 U.S.C. § 1395*oo* (a) (1976). The Board affirmed the decision of the Intermediary and, pursuant to 42 U.S.C. § 1395*oo*(f) (1976), the Board's decision became the final decision of the Secretary when the Secretary failed to modify or reverse the Board's decision within sixty days of its issuance. The Hospital then sought judicial review of this decision pursuant to 42 U.S.C. § 1395*oo*(f); accordingly, our standard of review is that set forth in the Administrative Procedure Act, 5 U.S.C. § 706 (1976).

The first issue on appeal involves the Secretary's refusal to allow reimbursement for television and telephone service. The Hospital's practice is to provide a television and telephone to all patients without an additional charge. In the fiscal year at issue, the Hospital claimed $6,062 in television rental and repair expenses, $2,657 for depreciation of television equipment, and $221,598 for telephone expenses. The Intermediary disallowed 90% of the television expenses and 34.72% of the telephone expenses. The Intermediary calculated the television disallowance percentage on the basis that 10% of patient use was "educational" and therefore reimburseable pursuant to 42 C.F.R. § 405.421 (1979); the telephone disallowance percentage was based on the ratio of patient telephone jacks to the total number of telephone jacks in the Hospital.

The second issue on appeal involves the Secretary's refusal to allow reimbursement for the expenses the Hospital incurred in fulfilling its free care obligation under the Hill-Burton Act, 42 U.S.C. § 291 *et seq.* (1976). The Hill-Burton Act provides an interest subsidy to hospitals on hospital construction and modernization loans, whereby the federal government pays directly to the lender 3% of the effective net interest per

year. 42 U.S.C. § 291j–4 (1976). In order to qualify for this subsidy, however, the hospital must agree to provide a certain amount of free medical care to indigents. 42 U.S.C. § 291(c) (1976). As we explained in *Cook v. Ochsner Foundation Hospital*, 559 F.2d 968, 972 (5th Cir. 1977), "[t]he service to indigent patients is a *quid pro quo* exacted in return for the benefaction received from the taxpayers." The free care obligation is legally enforceable, and vests a cause of action in the indigent beneficiaries to sue for the free care. *Saine v. Hospital Authority of Hall County*, 502 F.2d 1033, 1034–35 (5th Cir. 1974). The obligation may be met in one of two ways: the hospital may agree to budget for uncompensated services to indigents not less than the lesser of 3% of its operating costs or 10% of all federal assistance received under the Hill-Burton Act, or it may agree that it will not exclude any person from admission on the ground that that person is unable to pay for the needed services. 42 C.F.R. § 53.111(d) (1979). The Hospital chose the latter "open door" approach, and agreed to provide service to all indigents who presented themselves for care. The Hospital received approximately $225,000 in Hill-Burton interest subsidies during the fiscal year at issue. The Hospital sought to recover a total of $178,871 in expenses incurred in the

provision of free care to indigents, and the Board disallowed this entire amount.[1]

## II. TELEVISION AND TELEPHONE EXPENSES

The Social Security Act specifically excludes "personal comfort items" from medicare coverage. 42 U.S.C. § 1395y(a)(6) (1976). Interpreting this provision, regulations of the Department of Health and Human Services list "a television set" and "telephone service" as examples of personal comfort items. 42 C.F.R. § 405.310(j) (1979). The Hospital does not seriously argue that this interpretation is beyond the authority of the Secretary.[2]

Instead, the Hospital argues that medicare patients have a constitutional right, under the Free Speech Clause of the First Amendment, to government reimbursement of television and telephone expenses incurred during their covered hospitalization. We disagree. Assuming without deciding that the government is barred by the First Amendment from acting to *prevent* a hospital patient's access to television and telephone service, we think it clear that there is no constitutional obligation to *finance* such access. In *Harris v. McRae*, —— U.S. ——, —— –——, 100 S.Ct. 2671, 2688–89, 65 L.Ed.2d 1094 (1980) (holding

1. The Hospital did not originally claim reimbursement for its free care expenses. At first, it sought to include in its expenses the full amount of the interest payment made by the government under the Hill-Burton Act; the Hospital only asked for its free care expenses when reimbursement for the interest payment made by the government was denied by the Intermediary. The Hospital's initial position seems to have been based on its contingent liability for the entire interest payment, including that portion made by the government under the Hill-Burton Act. This argument was not, however, made before the Board.

2. The Hospital does note that the examples of personal comfort items listed in 42 C.F.R. § 405.310(j), *i. e.*, "a television set" and "telephone service," are not precisely the same examples that are listed in the Senate Report on the Social Security Amendments of 1965, which included the provision which excludes personal comfort items. *See* S.Rep.No.404, 89th Cong., 1st Sess. (1965), *reprinted at* [1965] U.S.Code Cong. & Ad.News 1943. That report refers at one point to "[i]tems supplied at the

request of the patient for his convenience, such as television rental in hospitals." [1965] U.S. Code Cong. & Ad.News at 1969. At another point it refers to "such potential personal comfort items and services as massages and heat lamp treatment." *Id.* at 1989. The first of these comments was made in connection with the Committee's discussion of the "reasonable cost of services" which is reimbursed pursuant to 42 U.S.C. § 1395f, and not in connection with the section 1395y exclusion at issue here. The second of these comments does appear to relate to the section 1395y exclusions, but was made in the context of a discussion of the first of those exclusions (expenses which "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member"). These comments—which are the only facts raised on appeal by the Hospital in connection with the validity of the regulations—do not indicate that the regulations are beyond the authority of the Department of Health and Human Services.

constitutional the Hyde Amendment, which severely limits the reimbursement of abortion costs from medicaid funds), the Supreme Court explained the applicable principle:

> Although the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions, it does not confer an entitlement, to such funds as may be necessary to realize all the advantages of that freedom. To hold otherwise would mark a drastic change in our understanding of the Constitution. It cannot be that because government may not prohibit the use of contraceptives, or prevent parents from sending their child to private school, [that] government therefore, has an affirmative constitutional obligation to ensure that all persons have the financial resources to obtain contraceptives or send their children to private schools.

—— U.S. at ——–——, 100 S.Ct. at 2688–89 (citations omitted). The exclusion of television and telephone expenses from medicare coverage does not prevent access to television and telephone service, for the patient may pay for such service himself. Since the government is not required to finance the exercise of First Amendment rights, the government may exclude from medicare coverage costs which may in fact be used for such purposes.

The Hospital argues that the government is nevertheless constitutionally required to provide hospital patients with television and telephone service because of the restraints placed on their liberty by hospital confinement. For this proposition the Hospital relies on the First Amendment rights of prisoners. *See, e. g., Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Hospital patients, like prisoners, do indeed have their liberty restrained. But the First Amendment analogy between hospital patients and prisoners is inapposite. As the Supreme Court explained in *Harris v. McRae:*

> [A]lthough government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not

remove those not of its own creation. Indigency falls in the latter category. The financial constraints that restrict an indigent woman's ability to enjoy the full range of constitutionally protected freedom of choice are the product not of governmental restrictions on access to abortions, but rather of her indigency.

—— U.S. at ——, 100 S.Ct. at 2688. The conditions of prison confinement are undoubtedly created by the government. The conditions of hospital confinement, on the other hand, are the product of private choices. Admittedly, some patients have no reasonable option but to submit to hospitalization and to accept the government's financial help, and some of these patients will be financially unable to pay the cost of television and telephone service. But the cause of these patients' inability to afford television and telephone service is their indigency, and that is a condition which, as the Supreme Court noted in *McRae,* is not of the government's creation. Therefore the government is not constitutionally required to fund a patient's access to television and telephone service.

■ The Hospital also argues that the exclusion of television and telephone costs from medicare coverage shifts the burden for those expenses to non-medicare patients of the Hospital, since the Hospital's practice is to provide television and telephone service to all patients without individually charging each for his television and telephone. This result runs contrary, so the Hospital's argument runs, to the Social Security Act's policy against shifting costs for the treatment of medicare patients to individuals not covered by the program. *See* 42 U.S.C. § 1395x(v)(1)(A) (1976); 42 C.F.R. §§ 405.402(a), 405.420(d) (1979). We disagree. The fact that medicare does not cover television and telephone service does not obligate the Hospital to provide those services to all of its patients but to charge only non-medicare patients. The Hospital is not required to provide services which are not covered by medicare to each patient, and is free to charge medicare patients the costs of services which are not covered by the program. *See Mount Sinai Hospital of*

*Greater Miami v. Weinberger*, 517 F.2d 329, 335, 340 n.18 (5th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976).

### III.  HILL–BURTON FREE CARE EXPENSES

As was noted in Part I of this opinion, the Hospital receives an interest subsidy under the Hill-Burton Act for certain loans contracted in order to provide funds for hospital construction and modernization.  One condition of this subsidy is that the Hospital obligate itself to provide a certain amount of free medical care to indigents; the Hospital fulfilled this requirement in the fiscal year at issue by agreeing to provide free care on an open door basis to all who requested care but could not pay for it.  Under this arrangement, therefore, the Hospital incurs certain expenses for indigent medical care in exchange for an interest subsidy from the federal government which helps to finance hospital construction and modernization projects.  These facts were accepted both by the Intermediary and by the Board.  As the Board explains, no party disputes "the Provider's legal responsibility to provide free care pursuant to Hill-Burton requirements nor the value the interest subsidy has in relationship to enabling the Provider to render improved health care services."  *Presbyterian Hospital of Dallas v. Blue Cross Association Group Hospital Service, Inc.*, Provider Reimbursement Review Board Decision No. 78–96, at 13 (Feb. 28, 1979).

██  Nevertheless the Board denied reimbursement for the costs of the Hospital's free care obligation.  Although the rationale behind the Board's decision is not altogether clear, it seems to rest on the assumption that reimbursement would be contrary "to the objective of determining reasonable cost whereby costs with respect to individuals covered by the program will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program."  *Id.*  The Board explains that, while "the cost of rendering the free care is a cost to the facility," the patients who receive the free care may not have any portion of the costs

of their care borne by the medicare program, since the result would be that the medicare program would pay for care provided to non-covered patients.  *Id.*

The Board correctly states the applicable principle, for the Hospital is entitled to reimbursement only for the reasonable cost of services provided to medicare patients.  42 U.S.C. § 1395f(b).  Reasonable cost is defined in the Social Security Act as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services."  Reasonable cost is defined to include both direct and indirect costs, but the statute specifically states that costs are to be calculated so that "the necessary costs of efficiently delivering covered services to individuals covered by [medicare] will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by [medicare]."  42 U.S.C. § 1395x(v)(1)(A).  *See* 42 C.F.R. § 405.451(c)(3) (1979).

However, the general principle on which the Board relies does not bar reimbursement for Hill-Burton free care expenses, for the Hospital is legally obligated to make such expenses and receives, in exchange for this obligation, a government subsidy which benefits all of the Hospital's patients, including those covered by medicare.  Although the provision of free care pursuant to this obligation inures to the direct benefit of indigents rather than to medicare patients, it indirectly benefits medicare patients by qualifying the Hospital for federal interest subsidies on construction and modernization projects which are ultimately used by medicare patients.  We find persuasive the logic employed by the United States District Court for the Western District of Louisiana, which faced this precise issue in *Rapides General Hospital v. Matthews*, 435 F.Supp. 384 (W.D.La.1977), *vacated and remanded on other grounds*, No. 77–3125 (5th Cir., Oct. 23, 1978) (unpublished order).  As that court explained:

Defendant's opposition is a straightforward one.  The indigents receiving Hill-Burton free care are persons other than

those covered by medicare. Thus, their stature as "individuals not so covered" automatically precludes the plaintiff from receipt of medicare payments as to their costs. But this response misapprehends the thrust of plaintiff's argument. Plaintiff does not assert that the free care beneficiaries are medicare recipients and that their costs are reimbursable as such. Rather, plaintiff argues that the costs of free care are incidental allowable costs, similar in nature to interest or depreciation, neither of which go directly to benefit medicare patients, but which nonetheless inure as a residual benefit to them and are thus compensable on that basis. Consequently, defendant's response functions in a misplaced context. 435 F.Supp. at 388.

Like the plaintiff in *Rapides*, the Hospital does not deny that indigent patients directly benefited from its free care expenses. It argues, instead, that those expenses are *indirect* costs incurred for the benefit of all of the patients of the Hospital. We note that both the statute and the regulations provide for reimbursement for indirect as well as direct costs. 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 405.451(c)(3) (1979). Indeed, the regulations allow reimbursement for a number of specific indirect costs, including depreciation, interest, some types of bad debts, research costs, and even a return on the equity capital of proprietary owners. *See* 42 C.F.R. § 405.401 *et seq.* (1979). In particular, an interest payment actually made by the Hospital to a lender of funds is clearly reimbursable, 42 C.F.R. § 405.419(b) (1979), and the Hospital was in fact reimbursed for that portion of the interest on its outstanding loans which was paid by the Hospital rather than by the government pursuant to the Hill-Burton Act. Although free care expenses are not "interest" within the meaning of the regulations, *see id.*, we are unable to distinguish such expenses in

principle from interest and other indirect costs. It is undisputed that the Hospital was legally obligated to make such expenses, and it is also undisputed that the expenses indirectly benefited medicare patients by qualifying the Hospital for interest subsidies on construction and modernization projects. The fact that such expenses also benefited indigent persons who were not medicare beneficiaries is irrelevant to the determinative issue: whether the expenses were a reasonable cost incurred in the provision of services to medicare patients. We conclude, therefore, that the free care expenses incurred by the Hospital in connection with its obligations under the Hill-Burton Act were reasonable costs of providing care to all of its patients, including medicare patients, and are consequently reimbursable to the extent that this indirect cost benefited medicare patients.[3]

In addition to its explicit reliance on the principle that medicare should not pay for costs that were not incurred in the provision of services to medicare patients, the Board quotes the language of 42 C.F.R. § 405.-420(c) (1979), which provides:

> Normal accounting treatment: reduction in revenue. Bad debts, charity, and courtesy allowances represent reductions in revenue. The failure to collect charges for services rendered does not add to the cost of providing the services. Such costs have already been incurred in the production of the services.

This provision in effect bars a medicare provider from collecting twice for the same reimbursable cost: once for the expenses incurred in the provision of medical services and once for the provider's failure to receive payment for those services. Thus, if the Hospital has already been reimbursed by the Intermediary for the costs incurred in providing free care to indigents, it may not also be reimbursed for the reduction in

**3.** On appeal, the government also contends that reimbursement of free care expenses gives the Hospital a windfall; since the interest subsidy received by the Hospital is greater than its free care expenses, so the government argues, the Hill-Burton Act gives the Hospital a net gain rather than a loss. It is true that the Hill-Burton Act saves the Hospital money, but it does

so by reducing its expenses and not by increasing its revenue; accordingly, the Hospital now seeks reimbursement only for the lower cost of borrowing funds (*i. e.*, interest payments plus free care expenses), and does not seek reimbursement for the higher interest expenses it would incur in the absence of the Hill-Burton Act.

revenue caused by the inability of the indigent recipients of those services to pay for their care.

However, the factual issue raised by this regulation does not appear to have been addressed by any of the parties or to have been considered by the Board. Neither the Intermediary (in its presentation to the Board) nor the government (in its brief on appeal) made an argument based on this provision of the regulations; both relied instead on the first argument dealt with in this opinion, that is, that the free care costs directly benefited the indigent recipients of the care rather than medicare patients.[4] Moreover, the Board does not address this question in its opinion. The Board's quotation of section 405.420(c) of the regulations is in fact followed by its explanation of the argument with which we have already dealt; the Board at no point states that free care expenses have twice been included in the Hospital's calculation of allowable costs, and makes no attempt to explain why this bar on "double counting" is at all relevant to the facts of this case.[5] In fact, the Board does not appear to have considered the precise amount of the Hospital's free care expenses.[6] This is understandable, since the Board disallowed reimbursement; still it is difficult to imagine how the Board could find that the Hospital had already been reimbursed for those expenses without first deciding what the expenses were. It would appear, therefore, that the Board's decision may rest solely on the principle that medicare should not pay costs attributable to the care of non-medicare patients, and not at all on the rationale underlying section 405.420(c). Certainly there is no indication that the Board has considered the factual question raised by section 405.420(c).

Two factual issues therefore remain to be resolved before the Hospital can be reimbursed for its free care expenses: whether or to what extent the Hospital has already been reimbursed for those expenses in the fiscal year at issue, and, to the extent that the Hospital's free care expenses have not been reimbursed, precisely what those expenses are. As we explained above, the Hospital is entitled to reimbursement for

---

4. Nor does it appear that the district court considered this question. Although the district court's brief memorandum opinion also cites section 405.420 of the regulations, it refers to no finding that free care expenses have already been reimbursed, and relies on that section only for the unrelated principle with which we have already dealt, in particular, that "charity allowances have no relationship to beneficiaries of the medicare program and are [therefore] not allowable costs."

5. The Board's entire explanation of its decision on the free care expense issue is as follows: The Board does not dispute the Provider's legal responsibility to provide free care pursuant to Hill-Burton requirements nor the value the interest subsidy has in relationship to enabling the Provider to render improved health care services. However, the cost which the Provider is seeking with respect to the associated free care must be put in its proper perspective. The Board finds that the cost of free care is explicitly dealt with in the Regulations. More specifically, 42 CFR 405.-420(c) states: [the section is quoted in full] Accordingly, the failure to collect for the free care does not convert the charge into a reimbursable cost. Although the Board recognizes that the cost of rendering the free care is a cost to the facility, the Regulations specifically exclude charity allowances from al-

lowable cost. An allowance for the free care would be in direct opposition to the objective of determining reasonable cost whereby costs with respect to individuals covered by the program will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program. The patients in this case who are receiving the disputed free care fall into the latter category of patients. Inasmuch as they are not Medicare beneficiaries, their costs, the free care, may not be borne by the program.
*Presbyterian Hospital of Dallas v. Blue Cross Association Group Hospital Service, Inc.*, Provider Reimbursement Review Board Decision No. 78–96, at 13 (Feb. 28, 1979).

6. The Hospital introduced the testimony of Marshall Chamness, Jr., the Hospital's financial director, to explain the basis of the Hospital's claim for reimbursement of its free care expenses. He explained on cross-examination that the $178,871 free care figure was based on "normal charges" rather than on "actual costs," and admitted that the "cost" of providing the free care was probably about $158,700. Record at 176–77. No other testimony was presented on this question, and the Board does not appear to have examined the accuracy of Chamness' estimate.

the medicare patients' portion of expenses incurred as a result of obligations assumed under the Hill-Burton Act, provided that those expenses have not already been included in the Hospital's reimbursed costs.

■■ Although factual issues remain to be resolved, however, these questions may not be decided *de novo* by the district court. *De novo* determination of a factual question in a judicial review of an adjudicatory proceeding governed by the Administrative Procedure Act is authorized only if the agency factfinding procedures are inadequate. *Camp v. Pitts,* 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Otherwise the courts must allow the agency to decide the issue for itself. Where an error of law has been corrected by a reviewing court, and the only issues remaining in the case are questions which have not yet been considered by the administrative agency but are nevertheless within the agency's authority, the appropriate action is a remand to the agency so that it may exercise its authority. As the Supreme Court explained in *FPC v. Idaho Power Co.,* 344 U.S. 17, 20, 73 S.Ct. 85, 86, 97 L.Ed. 15 (1952), "the guiding principle ... is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration." *See, e. g., South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers,* 425 U.S. 800, 806, 96 S.Ct. 1842, 1845, 48 L.Ed.2d 382 (1976); *NLRB v. Food Store Employees,* 417 U.S. 1, 9, 94 S.Ct. 2074, 2079, 40 L.Ed.2d 612 (1974); *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 145, 60 S.Ct. 437, 442, 84 L.Ed. 656 (1940); *Whittaker Corp. v. United States,* 443 F.2d 1373, 1386 (Ct.Cl.1971); *McBride v. Smith,* 405 F.2d 1057, 1059 (2d Cir. 1968); *Citizens Band of Potawatomi Indians v. United States,* 391 F.2d 614, 624 (Ct.Cl. 1967), *cert. denied,* 389 U.S. 1046, 88 S.Ct. 771, 19 L.Ed.2d 839 (1968). Since there is no suggestion that there is any inadequacy in the Board's fact finding procedures, this case should be remanded to the Board for proceedings consistent with this opinion.

## IV. CONCLUSION

Medicare patients do not have a First Amendment right to the inclusion of the costs of television and telephone service in medicare coverage; we therefore affirm the district court's summary judgment in favor of the Secretary with respect to television and telephone expenses. Free care expenses for which the Hospital becomes obligated under the Hill-Burton Act are, however, included as a matter of law within a medicare provider's reasonable expenses under the Social Security Act; we therefore reverse the district court's summary judgment in favor of the Secretary with respect to the free care expenses. Since the Hospital's claim rests on factual issues which were not reached by the Board, we direct the district court to remand this case to the Secretary for proceedings consistent with this opinion.

AFFIRMED IN PART and REVERSED IN PART with DIRECTIONS TO REMAND.