JOHNSON COUNTY MEMORIAL HOSPITAL, et al., Plaintiffs-Appellees,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellant.

No. 82–1213.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1982.

Decided Feb. 1, 1983.

Katherine S. Gruenbeck, Dept. of Justice, Washington, D.C., for defendant-appellant.

Rex P. Killian, Hall, Render & Killian, Indianapolis, Ind., for plaintiffs-appellees.

Before BAUER and COFFEY, Circuit Judges, and WISDOM,* Senior Circuit Judge.

COFFEY, Circuit Judge.

This is an appeal from the decision of the district court granting the plaintiffs' motion for summary judgment while denying the defendant's like motion on the grounds that the costs incurred by the plaintiffs in providing a percentage of free care to indigent persons in fulfillment of the hospitals' obligations under the Hill-Burton Act did not constitute "charity allowances" and thus were reimbursable expenses under the Medicare program. Reverse.

The plaintiffs are fifty-one hospitals located throughout the state of Indiana, and each of these hospitals received federal funds for either the construction or modern-

ization of their medical facilities in the form of grants under the federal program known as the Hill-Burton Act.[1] 42 U.S.C. § 291. In partial repayment of their Hill-Burton grant, the Act requires participating hospitals to provide a reasonable volume of free care to indigent persons residing in the hospitals' "territorial area." The Secretary of the United States Department of Health and Human Services has adopted regulations that direct hospitals who received Hill-Burton funds to provide a percentage of free medical care to local indigent persons based on one of the following three formulas: not less than the lesser of (1) 10% of all federal assistance received under the Hill-Burton Act; or (2) 3% of the hospital's net operating costs. As a third alternative, in order to fulfill its obligation arising out of the receipt of Hill-Burton funds, a participating hospital could elect to participate in the "open door" program and provide care to all local indigents admitted to the hospital and in need of medical care or treatment. 42 C.F.R. § 53.111. Of the hospitals involved in this appeal, forty-five elected to provide free care to indigents based upon the open door program and six of the hospitals decided to provide uncompensated care based upon the 10% formula.

All of the hospitals in this case have also been qualified by the Secretary of the Department of Health and Human Services as providers of Medicare services and as such, the hospitals are entitled to reimbursement from the Medicare program for the "reasonable costs" they incur in providing medical treatment to Medicare beneficiaries. 42 U.S.C. § 1395f(b). Under the Secretary's regulations, the Secretary enters into contracts with private organizations designated as "fiscal intermediaries"[2] who reimburse the hospitals for the "reasonable costs" the hospitals incur in providing medical treat-

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The Hill-Burton Act was enacted in 1946 to assist in the construction and modernization of hospitals and to ensure adequate hospital services for all persons. As an obligation arising out of their receipt of federal funds under the

Hill-Burton Act, hospitals are required to provide a reasonable volume of charity services to persons unable to pay therefore. 42 U.S.C. § 291c(e).

2. Hospitals qualified as providers of medical services to Medicare beneficiaries are usually reimbursed for the reasonable cost of the medical care rendered to Medicare beneficiaries by private organizations acting as "fiscal interme-

ment to Medicare patients and who are in turn reimbursed by the government for the sums they pay to the hospitals. Each of the hospitals involved in this case sought Medicare reimbursement from their fiscal intermediary (Blue Cross/Blue Shield) "on the primary theory that the free care obligation is an indirect cost of the Medicare Program." The hospitals argued in the alternative that "the cost in providing free care under the Hill-Burton Act constitutes interest for the use of borrowed funds and is reimbursable under the Medicare Program" as a "reasonable cost" of providing care to Medicare beneficiaries. The fiscal intermediary disallowed Medicare reimbursement of the "costs" claimed for the rendering of charity care to indigents pursuant to the hospitals' obligations under the Hill-Burton grant agreements, and the plaintiffs appealed to the Provider Reimbursement Review Board.[3] After a hearing, the Provider Reimbursement Review Board upheld the fiscal intermediary's finding that the free care hospitals provided to the indigent in fulfillment of their Hill-Burton obligation was a "charity allowance," an expense not reimbursable under the Medicare program. The Administrator of the Health Care Financing Administration, acting for and on behalf of the Secretary of the United States Department of Health and Human Services, declined to review, affirm or modify the decision of the Provider Reimbursement Review Board, and therefore the Board's decision became final. Thereafter, the hospi-

tals sought review[4] of the Provider Reimbursement Review Board decision disallowing Medicare reimbursement for the costs the hospitals incurred in providing a percentage of free care to local indigent persons in partial repayment of their Hill-Burton obligations.

In ruling on the parties' cross motions for summary judgment, the district court found that the cost of providing a percentage of free care to indigents under the Hill-Burton Act indirectly inured to the benefit of Medicare patients because the free care given to indigents is "simply a payment for the building improvements enjoyed both by them [the indigents] and by Medicare patients." The court ruled that "[t]he Hill-Burton free care obligation costs therefore are indirect costs within the meaning of the Medicare legislation and as such should be proportionately reimbursable." The court went on further to hold that the hospitals' obligation to provide a percentage of free indigent care functions exactly as interest on a loan since it arises out of the receipt of the monies used in the construction or modernization of the hospitals' medical facilities. The court concluded that "it would be arbitrary and capricious to exclude the indirect cost of the free care obligation from the Medicare reimbursement calculus if interest on building loans is to be included." Finally, the court found that because the hospitals were obligated to provide a percentage of free care to indigents under the Hill-Burton Act, this free care could not be

diaries" under contract with the Secretary. 42 U.S.C. § 1395h. At the end of the hospitals' fiscal years, the hospitals submit cost reports to the designated fiscal intermediary, and the fiscal intermediary undertakes an analysis of the cost reports to ascertain the amount of reimbursable "reasonable costs" the hospitals incurred. 42 C.F.R. § 405.406(b). It is the fiscal intermediary's responsibility to allow or disallow in accordance with the Secretary's regulations those items claimed as "reasonable costs" by the hospitals. 42 C.F.R. § 1803.

3. Congress established the Provider Reimbursement Board, and gave the Board the authority to conduct a hearing when a provider disputes the decision of a fiscal intermediary, if the total amount in controversy is at least $10,-000. 42 U.S.C. § 1395oo. In the instant case the Provider Reimbursement Review Board

consolidated the appeals of the fifty-one Indiana hospitals into one appeal.

4. Twenty-six of the hospitals involved in this case are located in the Northern District of Indiana, and therefore filed suit in the District Court for the Northern District of Indiana. The other twenty-five hospitals filed suit in the District Court for the Southern District of Indiana, as these hospitals are located in the Southern District of Indiana. Upon the motion of those plaintiffs who filed suit in the Northern District of Indiana, their case was transferred to the District Court for the Southern District of Indiana and was consolidated with the action brought by the other hospitals in that court. The decision in this consolidated case is reported as *Johnson County Memorial Hospital v. Schweiker,* 527 F.Supp. 1134 (S.D.Ind.1981).

characterized as "charity," as charity is freely given and does not arise out of an obligation. Based on this reasoning, the district court denied the defendant's motion for summary judgment while granting the plaintiffs' like motion, and the Secretary of the Department of Health and Human Services appealed from the decision of the district court.

### ISSUE PRESENTED

Are hospitals who provide medical services to Medicare beneficiaries entitled to Medicare reimbursement of a percentage of the cost of providing free care to indigent persons in fulfillment of their obligations under the Hill-Burton Act?

■ On September 3, 1982 section 106 of the Tax Equity & Fiscal Responsibility Act of 1982 became effective. Section 106 amended 42 U.S.C. § 1395x(v)(1) which directs and authorizes the Secretary of the United States Department of Health and Human Services to adopt regulations consistent with congressional intent defining the term "reasonable costs" as the term applies to the reimbursement of Medicare expenses. Section 106 provides:

"(a) Section 1861(v)(1) of the Social Security Act [42 U.S.C. § 1396x(v)(1)] is amended by adding at the end the following new subparagraph:

'(M) Such regulations shall provide that costs respecting care provided by a provider of services, pursuant to an assurance under Title VI or XVI of the Public Health Service Act that the provider will make available a reasonable volume of services to persons unable to pay therefore, shall not be allowable as reasonable costs.'

(b) The amendment made by subsection (a) shall be effective with respect to any costs incurred under Title XVIII of the Social Security Act, except that it shall not apply to costs which have been allowed prior to the date of the enactment of this Act pursuant to the final court order affirmed by a United States Court of Appeals."

Congress also provided the following statement of congressional intent:

"*Conference Agreement*

The Conference Agreement includes the House Committee Provision. *The provision is intended to clarify that Hill-Burton free care costs have never been, and are not allowable for Medicare reimbursement purposes.* The provision, therefore, applies to all such costs that have been, or will be incurred except those recognized by the final judgment of a U.S. Court of Appeals entered into prior to enactment." (Emphasis supplied).

■ The plaintiffs contend that the retroactive application of section 106 is unconstitutional as it constitutes a taking of property without just compensation in violation of the fifth amendment. It is the hospitals' position that they have a vested contract right to Medicare reimbursement of the costs the hospitals incurred in providing a percentage of free care to local indigents in fulfillment of their Hill-Burton obligations. We refuse to accept the plaintiffs' position that they had a vested contractual right to Medicare reimbursement of the costs incurred in providing free health services to indigents because a fair reading of the Hill-Burton and Medicare Acts, from their inception, reveals that these two federal Acts as established are separate and distinct federal aid programs, and Congress never intended to reimburse hospitals with Medicare funds for the free care the hospitals are obligated to perform under the terms of the Hill-Burton Act. Moreover, it would be improper to allow the hospitals to receive a double payment from the government, and Congress did not intend to compensate hospitals a second time for medical care for which the government has already paid through contractual agreements for indigent care under the Hill-Burton Act.

The disposition of this case is controlled by the holding in a case decided this date. In *Saint Mary of Nazareth Hospital v. Department of Health & Human Services,* 698 F.2d 1337 (7th Cir.1982), this court held that the retroactive application of section 106 was constitutional and that the Secretary of the Department of Health

and Human Services acted properly in adhering to his long standing policy of disallowing Medicare reimbursement for the costs hospitals incurred in providing a percentage of indigent persons with free health care in partial fulfillment of their Hill-Burton contractual obligations. We reverse the finding of the district court and hold that the decision of *Saint Mary of Nazareth Hospital v. Department of Health & Human Services* is controlling as to the issues raised herein.