MEMORIAL HOSPITAL, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant-Appellee, Cross-Appellant.

No. 81–6230.

United States Court of Appeals, Eleventh Circuit.

June 6, 1983.

Rehearing and Rehearing En Banc Denied Aug. 11, 1983.

---

Leonard C. Homer, Ober, Grimes & Shriver, Baltimore, Md., for plaintiffs-appellants, cross-appellees.

Kendell W. Wherry, Asst. U.S. Atty., Orlando, Fla., Anthony J. Steinmeyer, John F. Cordes, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendant-appellant, cross-appellant.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

RONEY, Circuit Judge:

In this case we make two significant decisions. *First*, we hold that hospitals are not entitled to Medicare reimbursement for telephone services provided to patients, since they are excluded as "personal comfort items." On this decision we are in accord with the only other court of appeals case on point. *Saint Mary of Nazareth Hospital Center v. Department of Health and Human Services*, 698 F.2d 1337 (7th Cir.1983).

*Second*, we hold that hospitals may not charge the federal Medicare program for the free care provided to patients as a con-

dition for receiving Hill-Burton construction subsidies. This brings the Eleventh Circuit in line with the other four circuits that have considered the issue. *See Iredell Memorial Hospital v. Schweiker,* 699 F.2d 196 (4th Cir.1983); *Johnson County Memorial Hospital v. Schweiker,* 698 F.2d 1347 (7th Cir.1983); *Saint Mary of Nazareth Hospital Center v. Department of Health and Human Services,* 698 F.2d 1337 (7th Cir.1983); *Metropolitan Medical Center v. Harris,* 693 F.2d 775 (8th Cir.1982); *Harper-Grace Hospitals v. Schweiker,* 691 F.2d 808 (6th Cir.1982).

Plaintiffs, sixty-one Florida general acute care hospitals and one hospital in the District of Columbia, are qualified providers of medical services under the Medicare provisions of the Social Security Act, 42 U.S.C.A. § 1395 *et seq.* They are entitled to be reimbursed for reasonable costs incurred in the provision of necessary health services to Medicare beneficiaries. 42 U.S.C.A. § 1395x(v)(1)(A). As Medicare providers, the hospitals receive periodic reimbursements from a fiscal intermediary of the Department of Health and Human Services. 42 U.S.C.A. § 1395g, 1395h. Providers file cost reports with the intermediary at the end of each fiscal year. 42 U.S.C.A. § 1395g; 42 C.F.R. § 405.453(f) (1981). The intermediary may then retroactively adjust the payments made during the previous year.

In this case, the intermediary denied reimbursement for patient telephone costs and Hill-Burton expenses incurred in various cost reporting periods ending in 1976 and 1977. The hospitals appealed the intermediary's action to the Provider Reimbursement Review Board (PRRB) pursuant to 42 U.S.C.A. § 1395oo(a). The PRRB affirmed the intermediary's action on both counts, holding that it had no jurisdiction to review the intermediary's decision on the patient telephone expense issue. The PRRB decision was not affirmed, reversed, or modified by the Secretary within sixty days of issuance, and therefore became final. 42 U.S.C.A. § 1395oo(f)(1).[1] The hospitals appealed to the district court.

The hospitals appeal from the district court's decision which (1) rejected the hospitals' claim for reimbursement of patient telephone costs, and (2) upheld as reasonable the accounting system used in excluding patient telephone costs. The Secretary of the Department of Health and Human Services cross-appeals from the district court's decision which held that Hill-Burton costs are reimbursable under the Medicare program. We affirm on the appeal, and reverse on the cross-appeal.

## I. *Patient Telephone Costs*

### A. *Jurisdiction*

The Secretary contends there can be neither administrative nor judicial review of the intermediary's denial of reimbursement for patient telephone expenses. This jurisdictional argument is based upon 42 U.S.C.A. § 1395oo(g), which provides:

> The finding of a fiscal intermediary that no payment may be made under this subchapter for any expenses incurred for

---

1. 42 U.S.C.A. § 1395oo(f)(1), as amended in 1980, provides:

 A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which such determination is rendered ... Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5, notwithstanding any other provisions in section 405 of this title.

items or services furnished to an individual because such items or services are listed in section 1395y of this title shall not be reviewed by the Board, or by any court pursuant to an action brought under subsection (f) of this section.

Patient telephone costs are not specifically mentioned in section 1395y, but section 1395y(a) provides:

no payment may be made under part A or part B of this subchapter for any expenses incurred for items or services—

. . . (6) which constitute personal comfort items.

A Medicare regulation issued by the Secretary cites patient telephone service as an example of a "personal comfort item":

Notwithstanding any other provisions of this Part 405, no payment may be made for any expenses incurred for the following items or services:

. . . .

(j) Personal comfort items and services (for example a television set, or telephone service, etc.)

42 C.F.R. § 405.310(j).

Following the Secretary's regulation, the intermediary rejected the hospitals' claim for patient telephone expenses as a "personal comfort item" excluded under section 1395y. The PRRB and the district court concluded that they lacked jurisdiction to review the intermediary's finding because section 1395oo (g) precludes PRRB or judicial review of an intermediary's decision to deny reimbursement for items or services "listed in section 1395y."

In essence, the issue here does not involve just an intermediary finding that no payment may be made. Rather, it concerns the validity of the regulation itself. The intermediary merely followed the Secretary's regulation. We hold that section 1395oo (g) does not preclude judicial review of the Secretary's regulation defining patient telephones as "personal comfort items." Section 1395oo (g) does not preclude judicial review of the Secretary's regulations. Although one of the categories "listed in" section 1395y is "personal comfort items," no specific personal comfort item is identi-

fied or described in the statute. The Secretary's determination that patient telephones are personal comfort items is reviewable. *Saint Mary of Nazareth Hospital Center v. Department of Health and Human Services,* 698 F.2d 1337, 1345–46 (7th Cir.1983). To expand the non-reviewability of intermediary decisions to include policy decisions of the Secretary would not merely insulate from judicial scrutiny the finding of an intermediary. It would give the Secretary virtually unbridled discretion to prevent reimbursement through regulations. Such a result would run contrary to the presumption favoring judicial review. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) ("[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."); *Deering Milliken, Inc. v. Occupational Safety & Health Review Comm.,* 630 F.2d 1094, 1099 (5th Cir.1980).

**B. *Validity of the Regulation***

■ In *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381 (5th Cir.1981), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), the Fifth Circuit held the Government was not constitutionally required to fund a patient's access to television and telephone service. It did not decide whether the Secretary had authority under the statute to deny reimbursement for patient telephones through regulation. The hospital did not "seriously argue" that regulation 405.310(j) was beyond the authority of the Secretary. 638 F.2d at 1384.

The question in this case is whether the Secretary's decision, to reimburse providers for the cost of telephones used in emergency communications systems and to deny reimbursement for telephones used by patients to call friends and relatives, is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A). The Secretary is authorized to prescribe regulations necessary to carry out the Medicare program, 42 U.S. C.A. § 1395hh, and to determine Medicare reimbursement questions in accordance

with those regulations. 42 U.S.C.A. § 1395ff(a).

The hospitals argue that the Secretary's discretion in defining "personal comfort items" is limited by the legislative history of section 1395y(a)(6), which states:

> [S]uch potential personal comfort items and services as massages and heat lamp treatments would only be covered where they contribute meaningfully to the treatment of an illness or injury....

S.Rep.No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Ad.News 1943, 1989. The hospitals, contending that this indicates a Congressional intent to provide reimbursement for any potential personal comfort items that have therapeutic value, introduced extensive evidence to show that in-room patient telephones which provide access to friends and relatives aid in the healing process. Although the hospitals' arguments are appealing, it appears to us that under the precedents by which we are controlled, they should be addressed to the Secretary rather than to the courts. The question is not whether telephones have therapeutic value, but whether the costs of patient telephones should be reimbursed by the Medicare program.

In determining the validity of the Secretary's regulation, we are required to grant considerable deference to the agency's determination. The agency, not the courts, bears the ultimate fiscal responsibility to Congress. The agency regulations prescribed by the Secretary take on "legislative effect." *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). "Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term," and a reviewing court may not reverse the agency "simply because it would have interpreted the statute in a different manner." *Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). *See Health Care Service Corp. v. Califano,* 601 F.2d 934, 935–36 (7th Cir.1979) (interpretation of complex statute such as the Medicare Act, by the officer charged with administering it, is entitled to considerable deference, and not to be rejected by a court because another interpretation may also be reasonable); *Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201, 1204 (5th Cir.1980).

We are constrained to agree with the Seventh Circuit that the Secretary's determination is not arbitrary, capricious or an abuse of discretion, is consistent with the Medicare Act and regulations, and is therefore valid and enforceable. *Saint Mary of Nazareth Hospital Center v. Department of Health and Human Services,* 698 F.2d 1337, 1346–47 (7th Cir.1983).

### C. *Method of Cost Allocation*

In excluding patient telephones from Medicare reimbursement, the Secretary employs the "average costing" method, attributing to each telephone in the hospital its proportionate share of total hospital telephone expenses (telephone bills, switchboards, operators, etc.), and then excluding from reimbursement the expenses of all phones assigned to patient use. The PRRB and the district court upheld this method for determining the amount of excluded patient telephone costs, relying on 42 C.F.R. § 405.451(b)(1)[2] and section 2106.1[3] of the

---

**2.** 42 C.F.R. § 405.451(b)(1) provides in pertinent part:

> Reasonable cost of any services must be determined in accordance with regulations establishing the method or methods to be used, and the items to be included. The regulations in this subpart take into account both direct and indirect costs of providers of services. The objective is that under the methods of determining costs, the costs with respect to individuals covered by the program will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program.

**3.** Section 2106.1 of the Manual provides in pertinent part:

> The *full* costs of items or services such as telephone, television, and radio which are located in patient accommodations and which are furnished solely for the personal comfort of the patients (full costs include costs both directly associated with personal comfort items or services plus an appropriate share of indirect cost) are not includable in allowable costs of providers under the Medi-

Provider Reimbursement Manual. This accounting method was upheld in *Saint Mary of Nazareth v. Department of Health and Human Services,* 698 F.2d 1337, 1347 (7th Cir.1983). The hospitals contend that only the marginal costs of patient phones should be excluded: "[T]he hospitals should be reimbursed, fully, for what their telephone system would have cost, had there been no installation of patient telephones." Although the accounting procedures suggested by the hospital might also be reasonable, the method used by the Secretary is consistent with the Medicare Act and regulations, cannot be regarded as arbitrary, capricious or an abuse of discretion, and therefore must be upheld.

## II. *Hill-Burton Costs*

■ The Secretary appeals from the district court decision which held that the hospitals are entitled to Medicare reimbursement for costs incurred in providing the free care to indigents required by the Hill-Burton Act, 42 U.S.C.A. § 291 *et seq.* The district court relied upon *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), which allowed Medicare reimbursement for Hill-Burton expenses. In August, 1982, however, after *Presbyterian Hospital* was decided, Congress passed the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248, 1982 U.S.Code Cong. & Ad.News (97 Stat.)

1. Section 106 of this Act clearly disallows reimbursement, contrary to the *Presbyterian Hospital* holding.

The Hill-Burton Act, 42 U.S.C.A. § 291 *et seq.,* provides federal funds for the construction and modernization of hospitals. In order to receive Hill-Burton funds, hospitals must provide a reasonable amount of free care to indigents. 42 U.S.C.A. § 291c(e)(2). A hospital may satisfy this obligation to provide uncompensated care to indigents for a 20-year period in one of two ways: (1) it may budget for free care to indigents at a level not less than the lesser of 3 percent of its operating costs or 10 percent of all federal assistance received under the Hill-Burton Act, or (2) it may certify that it will follow an "open door" policy, providing care to all indigents appearing at the hospital in need of care. 42 C.F.R. § 53.111(d).

Section 106 of the Tax Equity and Fiscal Responsibility Act amends the Medicare Act to provide: (1) that the Secretary's Medicare regulations shall provide that a hospital's costs in providing Hill-Burton free care to indigents are not reimbursable as reasonable costs, and (2) that the amendment shall be effective with respect to any Hill-Burton costs, except for those previously allowed by a final Court of Appeals judgment.[4] The Secretary has promulgated the regulations mandated by section 106.[5] The legis-

care program. To illustrate, the full costs of telephones used solely for the personal comfort of patients include not only costs directly associated with these telephones, such as the rates billed by the public utility, but also an appropriate share of indirect telephone costs, e.g., operators' salaries, equipment, space-related costs of switchboard and other equipment etc., as well as any other overhead that may be applicable thereto (emphasis in original).

**4.** The amendment to 42 U.S.C.A. § 1395x(v)(1), provides:

Sec. 106. (a) Section 1861(v)(1) of the Social Security Act is amended by adding at the end the following new subparagraph:

"(M) Such regulations shall provide that costs respecting care provided by a provider of services, pursuant to an assurance under Title VI or XVI of the Public Health Service Act that the provider will make available a

reasonable volume of services to persons unable to pay therefore, shall not be allowable as reasonable costs."

(b) The amendment made by subsection (a) shall be effective with respect to any costs incurred under title XVIII of the Social Security Act, except that it shall not apply to costs which have been allowed prior to the date of the enactment of this Act pursuant to the final court order affirmed by a United States Court of Appeals.

**5.** 47 Fed.Reg. 43658 (Oct 1, 1982), to be codified at 42 C.F.R. § 405.420, provides:

(b) *Definitions.—*

\* \* \* \* \* \*

(2) *Charity allowances.* Charity allowances are reductions in charges made by the provider of services because of the indigence or medical indigence of the patient. Cost of free care (uncompensated services) furnished

lative history accompanying section 106 states: "The provision is intended to clarify that Hill-Burton free care costs have never been, and are not, allowable for Medicare reimbursement purposes."[6] The amendment thus expressly removes the costs associated with a hospital's Hill-Burton obligation from the "reasonable costs" reimbursable under the Medicare program. The hospitals launch a series of attacks on the control of section 106 on the decision in this case.

 First, we consider whether the court should apply section 106, which was not yet in effect at the time this litigation was instigated. We agree with the Sixth Circuit that section 106 applies to appeals that were pending when it was enacted. *Harper-Grace Hospitals v. Schweiker,* 691 F.2d 808, 811 (6th Cir.1982). A court should apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 102, 109 (1801) ("if subsequent to the judgment and before the decision of the appellate court a law intervenes and positively changes the rule which governs, the law must be obey-

ed. . . ."). Therefore, as to this appeal, *Presbyterian Hospital of Dallas v. Schweiker,* 638 F.2d 1381 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), which allowed Medicare reimbursement for Hill-Burton costs, is not controlling.

Second, the hospitals argue that application of section 106 to their Hill-Burton claim would result in an unconstitutional taking of their property without just compensation in violation of the fifth amendment, because it would abrogate a vested contractual right to Medicare reimbursement. Upon joining the Medicare program, however, the hospitals received a statutory entitlement, not a contractual right. Although the hospitals entered into an "agreement" with the Secretary that they would abide by the rules of the Medicare program, that agreement did not obligate the Secretary to provide reimbursement for any particular expenses such as Hill-Burton costs. This constitutional challenge to section 106 was rejected in *Harper-Grace Hospitals v. Schweiker,* 708 F.2d 199 (6th Cir.1983) (denial of rehearing), and *Saint Mary of Nazareth Hospital Center v. Department of Health and Human Services,* 698 F.2d 1337, 1343–45 (7th Cir.1983). *See Arlington Hospital v. Schweiker,* 547 F.Supp. 670, 674–75

---

under a Hill-Burton obligation are considered as charity allowances.

\* \* \* \* \* \*

(g) *Charity allowances.* Charity allowances have no relationship to beneficiaries of the health insurance program and are not allowable costs. These charity allowances include the costs of uncompensated services furnished under a Hill-Burton obligation. (Note: In accordance with Sec. 106(b) of Pub.L. 97–248 (enacted September 3, 1982), this sentence is effective with respect to any costs incurred under title XVIII of the Social Security Act, except that it does not apply to costs which have been allowed prior to September 3, 1982, pursuant to a final court order affirmed by a United States Court of Appeals.) The cost to the provider of employee fringe-benefit programs is an allowable element of reimbursement.

**6.** The legislative history accompanying section 106 provides:

*House committee provision*
 The House committee provision requires the Secretary to provide, by regulation, that the costs incurred by a hospital or skilled nursing facility in complying with its free care obligation under the Hill-Burton Act would not be considered reasonable costs for purposes of Medicare reimbursement. The provision is effective for costs incurred on or after date of enactment.
*Conference Agreement*
 The conference agreement includes the House committee provisions. The provision is intended to clarify that Hill-Burton free care costs have never been, and are not, allowable for Medicare reimbursement purposes. The provision, therefore, applies to all, such costs that have been, or will be incurred except those recognized by the final judgment of a U.S. Court of Appeals entered into prior to enactment.
H.R.Rep. No. 760, 97th Cong., 2d Sess. 431, *reprinted in* 1982 U.S.Code Cong. & Ad.News, (97 Stat.) 409, 431.

(E.D.Va.1982). Courts have upheld retroactive adjustments in the Medicare reimbursement system. *See, e.g., Springdale Convalescent Center v. Mathews,* 545 F.2d 943, 955–57 (5th Cir.1977); *Adams Nursing Home v. Mathews,* 548 F.2d 1077, 1081 (1st Cir.1977) ("the expectations of those who enter a regulated field are diluted by the knowledge that occasional changes will be made to better carry out regulatory purposes"). This case is not similar to *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), where a legislative enactment repudiated and abrogated insurance contracts of the United States.

■ Third, the hospitals, relying upon *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872), argue that Congress may not "prescribe rules of decision" in matters that are in litigation, particularly where a lower court judgment has been entered against the Government. Although *Klein* contains language questioning the power of Congress to "prescribe a rule of decision to the Judicial Department of the Government in cases pending before it," 80 U.S. at 146, its holding invalidated legislation which both dictated to the judiciary how to resolve factual questions and interfered with the President's pardon power. In *American International Group, Inc. v. Islamic Republic of Iran,* 657 F.2d 430, 442 (D.C.Cir.1981), the court stated that *Klein* should not be read as casting doubt on the principle "that the courts are obligated to apply law (otherwise valid) as they find it at the time of final judgment, including, when a case is on review, the time of appellate judgment." Until appellate rights are exhausted, even an otherwise valid judgment may be negated by supervening legislation. *See, e.g., 149 Madison Ave. Corp. v. Asselta,* 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947) *modifying* 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947), (Supreme Court modified its own judgment to allow a district court to consider a defense created by Congress after the Supreme Court's judgment, but during the time for rehearing); *Electronic Data Systems v. Social Security Organization,* 651 F.2d 1007, 1011 (5th Cir. 1981); *De Rodulfa v. United States,* 461 F.2d 1240, 1250 (D.C.Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972). Although there may be constitutional problems with legislation purporting to disturb final judgments that have conferred vested rights, the district court judgment in this case, still pending on appeal, was not final. *See De Rodulfa v. United States,* 461 F.2d at 1252–53. Congress specifically provided in section 106 that Hill-Burton costs previously allowed by a final Court of Appeals judgment would not be affected.

Fourth, although the hospitals argue that denying Medicare reimbursement for Hill-Burton costs will shift those costs to non-Medicare patients in violation of 42 U.S.C.A. § 1395x(v)(1)(A) (Medicare regulations must provide that costs of covered services to Medicare patients will not be borne by non-Medicare patients), they fail to recognize that the condition for receiving Hill-Burton funds is the extension of free care to indigents, 42 U.S.C.A. § 291c(e)(2). *See Metropolitan Medical Center v. Harris,* 693 F.2d 775, 786 (8th Cir. 1982). Neither are the hospitals forced to operate at a loss, resulting in a "taking" of their property. The Government has not confiscated property because the hospitals had no enforceable property right to reimbursement. *See generally Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978).

There is no merit to the hospitals' contention that Congress violated the equal protection clause by irrationally discriminating between Hill-Burton claims already allowed pursuant to a final court of appeals judgment, as in *Presbyterian Hospital of Dallas v. Schweiker,* 638 F.2d 1381 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), and those claims still in litigation.

Four other circuits have reached the same conclusion that Hill-Burton costs are not reimbursable under the Medicare program. *See Iredell Memorial Hospital v. Schweiker,* 699 F.2d 196 (4th Cir.1983); *Johnson County Memorial Hospital v. Schweiker,* 698 F.2d 1347 (7th Cir.1983); *Saint Mary of*

*Nazareth Hospital Center v. Department of Health and Human Services,* 698 F.2d 1337 (7th Cir.1983); *Metropolitan Medical Center v. Harris,* 693 F.2d 775 (8th Cir.1982); *Harper-Grace Hospitals v. Schweiker,* 691 F.2d 808 (6th Cir.1982). In *Saint Mary of Nazareth,* the Seventh Circuit found section 106 to be constitutionally sound, noting the hospitals' lack of a "vested right" to reimbursement and the strong public interest in the clarification of congressional acts. It also stated that section 106 was supported by public policy, "because to allow hospitals to use one federal program to fund their obligations under another in an attempt to 'charge back' their excess costs to the government runs contrary to a reasonable reading of the two Acts." 698 F.2d at 1345. The Sixth Circuit, in *Harper-Grace Hospitals v. Schweiker,* 691 F.2d 808 (6th Cir. 1982), applied section 106, relying on the general rule that a court must apply the law in effect at the time it renders its decision. The court did not address the constitutionality of section 106 in its original opinion, but stated in its denial of rehearing that section 106 was not an unconstitutional "taking" of property. *Harper-Grace Hospitals v. Schweiker* [No. 81–1305, March 23, 1983]. In *Metropolitan Medical Center v. Harris,* 693 F.2d 775 (8th Cir.1982), the court declined to rely on section 106, resting its decision on the legislative history behind the Medicare and Hill-Burton Acts. "The test of the [Hill-Burton] Act, its implementing regulations, its legislative history, and the case law construing it all show that Medicare reimbursement for free care costs is inconsistent with the Hill-Burton Act." *Metropolitan Medical Center,* 693 F.2d at 782.

AFFIRMED ON APPEAL, REVERSED ON CROSS-APPEAL.